WILLIAM GUS FRANKIS *v.* STATE OF MARYLAND

[No. 356, September Term, 1970.]

*Decided March 31, 1971.*

The cause was submitted to ORTH, THOMPSON, and MOYLAN, JJ.

*Marvin S. Miller* and *J. Allan Cohan* for appellant.

*William E. Brannan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel Green, Jr., State's Attorney for Baltimore County,* and *John J. Lucas, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellant, William Gus Frankis, was convicted of storehouse breaking in a non-jury trial in the Circuit Court for Baltimore County by Judge John E. Raine, Jr. He was sentenced to one year under the jurisdiction of the Department of Correctional Services.

On appeal, he contends:

(1) That there was no probable cause for the issuance of the search and seizure warrant,

(2) That the trial judge erred in admitting into evidence testimony and a photograph of a Welbilt gas stove which was seized under the authority of, but not particularly described in, the search warrant, and

(3) That the evidence was insufficient to justify a conviction.

A vital link in the chain of evidence connecting the appellant with the storehouse breaking in issue was the testimony of an F.B.I. agent that he observed one Welbilt avocado gas stove of a certain model number and serial number in the 224 S. Gilmor Street residence of the appellant on October 21, 1968. The agent, Ronald Swanson, was in the appellant's residence for the purpose of executing a search and seizure warrant. That warrant was issued by a United States Commissioner in the course of an investigation of an unrelated theft from an interstate shipment of a load of bar stools and upon a showing of probable cause that the stolen bar stools were located in the residence, as well as in the business establishment, of the appellant. The gas stove, which is relevant to this case, was unconnected with the case under F.B.I. investigation. The observation of it was incidental to the search for stolen bar stools. The appellant, in his first contention, challenges the legality of that search. The propriety of the presence of Agent Swanson in the residence of the appellant on October 21, so that he would be in a position legally to observe the gas stove, is based upon the adequacy of the probable cause set out in the application for that search warrant.

The affidavit of Agent Swanson, which is the application for the search and seizure warrant, first recites that during the early morning of October 11, 1968, a trailer leased by the Joseph M. Zamoiski Company was stolen and that that trailer contained 157 cartons of "Comfortline" swivel snack and bar stools. The stolen bar stools were then further described in terms of model number and color.

Agent Swanson was relying in part on information furnished by two informants. That part of the application for the warrant recited:

> "Your affiant has been advised by two confidential sources, who have provided reliable, accurate, trustworthy and proven information in the past, that on several occasions in the past and in the recent past they have observed in the home of William G. Frankis, 224 S. Gilmor Street, and in the Mark Lounge, 201 S. Gilmor Street, goods that they believed to be stolen and goods that were described to them by Mr. Frankis as being stolen goods. Information furnished by these two confidential sources in the past has resulted in the arrest of two individuals and of recovery of stolen merchandise of a value in excess of $10,000."

That a search warrant may properly issue on hearsay information not reflecting the personal observations of the affiant is well settled, so long as the magistrate is informed of some of the underlying circumstances from which the informant drew his factual conclusion and some of the underlying circumstances from which the police concluded that the informant was credible or his information reliable. *Bolesta v. State,* 9 Md. App. 408, 412; *Spinelli v. United States,* 393 U. S. 410.

The first prong of the two-pronged test for evaluating information received from an informant, as that test was announced in *Aguilar v. Texas,* 378 U. S. 108, and expli-

cated by *Spinelli v. United States, supra,* is whether there is spelled out for the issuing magistrate the underlying circumstances from which the police concluded that the informant was credible or that his information was reliable in sufficient detail so that the magistrate may judge for himself that credibility and/or reliability.

In this case, Agent Swanson asserted not simply that the "two confidential sources" had "provided reliable, accurate, trustworthy, and proven information in the past" but further that the information furnished by those two sources had "resulted in the arrest of two individuals and the recovery of stolen merchandise of the value in excess of $10,000." This allegation of proven past performance was adequate for the issuing magistrate to conclude that the informants were credible.

The second prong of the two-pronged test for evaluating the information received from an informant is whether there is spelled out for the issuing magistrate the underlying circumstances from which the informants drew their factual conclusion in sufficient detail so that the magistrate may judge for himself the validity of that conclusion. In this regard, in the case before us the informants indicated that they personally observed certain goods in both the home of the appellant and in the Mark Lounge, his place of business. They do not set out (or, more significantly, the affidavit does not set out for them) the basis for their belief, in the first instance, that the goods were stolen. The validity of their conclusion is greatly buttressed, however, by the fact that the appellant described the goods to them "as being stolen goods." The application for the warrant did not recount, however, any description whatsoever of the stolen goods as observed by the informants so as to establish some nexus between "stolen goods" generally and the very specific stolen goods for which the search warrant in question was to issue.

Even where the information furnished fails *per se* to pass muster by *Aguilar* standards, however, the other allegations in the application for the search warrant which

served to corroborate the confidential information may then be considered. The test would then be whether the "tip", with certain parts of it corroborated by independent sources, would be as trustworthy as a "tip" which would pass *Aguilar*'s test without independent corroboration.

Even where a "tip" is not adequate unto itself as a predicate for determining that probable cause exists, it may nevertheless be a factor in the ultimate equation. As the Supreme Court said in *Spinelli,* at 418:

> "This is not to say that the tip was so insubstantial that it could not properly have counted in the magistrate's determination. Rather, it needed some further support."

In spelling out what other observations contained in the application for a warrant may do by way of verifying an informant's information and boosting it above the "probability" threshold, *Spinelli* held at 415:

> "The informer's report must first be measured against *Aguilar*'s standards so that its probative value can be assessed. If the tip is found inadequate under *Aguilar,* the other allegations which corroborate the information contained in the hearsay report should then be considered. At this stage as well, however, the standards enunciated in *Aguilar* must inform the magistrate's decision. He must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar*'s tests without independent corroboration?"

In the case before us, the independent police verification set out in the application for the warrant was significant. The theft under investigation had occurred on October 11. The F.B.I. agent received confidential information from the informants that goods, which they believed to be stolen and which the appellant had described

as "stolen goods", had been observed by them in the Mark Lounge at 201 S. Gilmor Street. The F.B.I. agent, posing as a customer, went to the Mark Lounge on the evening of October 18. He there observed an avocado-colored snack stool of a "Comfortline" make which bore the same model number as some of the avocado-colored "Comfortline" snack stools taken in the October 11 larceny. He also observed a carton containing the following markings: "swivel snack stool no. 9893; color, avocado; finish, chrome; weight, 16 lbs.". His application for the warrant had earlier recited that the information he received about the larceny included the fact that the stolen bar stools and snack stools were contained in cartons and that among the stolen items were "20 model no. 9893 avocado stools."

It is unnecessary for us to decide whether the information furnished by the informants, standing alone, established adequate probable cause, since the independent police verification invigorated that information both qualitatively and quantitatively. Whatever structural weakness may have inhered in the nexus between the goods stolen and the goods observed by the informants in the Mark Lounge, that nexus was girdered, if not indeed constructed, by the agent's direct observations. The sum total of "information received" plus independent police verification clearly rose above the "probability" threshold.

The appellant also complains that the trial judge committed error by permitting into evidence the testimony of Agent Swanson about the Welbilt gas stove and by permitting into evidence a Polaroid photograph taken of the stove by Agent Swanson. Although the storehouse breaking for which the appellant was convicted in this case occurred on or shortly before October 17, 1968, the investigative trail did not lead to the appellant until February 12, 1970, when a codefendant revealed to the police the appellant's complicity. The appellant was then arrested on February 27, 1970.

Similarly, although the F.B.I. recovered the Welbilt

gas stove from the residence of the appellant on October 21, 1968, several days after its theft, the significance of the stove went unnoticed for approximately sixteen months. Agent Swanson recorded the model and serial number of the stove (model no. 5221, serial number 108171) on October 21, 1968. He made a computerized check with the National Crime Information Center on that day but no information had been received by the N.C.I.C. indicating that the stove had been stolen. A similar computerized check was made on June 20, 1969, eight months later, and when that check turned out to be negative as well, the stove was turned over to the Salvation Army. A Polaroid photograph of it, however, had been retained.

Of legal significance in the case before us is not whether the F.B.I. had the right to *seize* the stove or not, but rather whether they had the right to observe those things in clear view when they were lawfully on the premises of the appellant's residence to execute a search and seizure warrant involving other items. We have held that there was probable cause upon which that warrant could issue. The presence of the F.B.I. upon the premises was, therefore, reasonable. To observe this large item, which was setting in clear view in the appellant's living room, and to record its description and serial number, was also reasonable.

The stove itself was not offered in evidence but only testimony as to its having been observed in the appellant's home on October 21, 1968. Any question of the legality of the seizure is irrelevant. As Judge Raine, the fact finder, concluded:

> "The stove is not being offered in evidence, the seizure is immaterial. As far as I'm concerned the agent could have turned on his heels and walked away without a picture. The verbal testimony of the agent that he saw a stove of this description and this serial number in the defendant's house is all that's needed."

We hold that the search of the appellant's home on October 21, 1968, was reasonable and, therefore, constitutional. The testimony of Agent Swanson as to those things he observed in clear view in the course of that search was properly admitted into evidence.

The appellant complains, finally, that the evidence against him was legally insufficient to sustain the conviction. That the *corpus delicti* of the crime was established is not contested. The criminal agency of the appellant was clearly established by the testimony of a codefendant, Donald Higgins, who spelled out in great detail the breaking, the entering, the theft and the disposition of the stolen goods. Higgins, of course, was clearly an accomplice. The appellant's thesis is that there is no evidence to corroborate the accomplice's testimony, if Agent Swanson's testimony is excluded from evidence. That thesis rests, however, upon a false premise, since we have herein held that Agent Swanson's testimony is not to be excluded. The exclusive possession of one of the items stolen in the storehouse breaking by the appellant within days after that storehouse breaking is ample corroboration of the accomplice's testimony. The appellant attempted to explain that possession by testifying that he had bought the stove for $50 from a boy named James. The fact finder, as is his right, gave no credence to the appellant's testimony. The weight of the testimony and the credibility of the witnesses are matters for the trier of the facts. *Weaver v. State*, 226 Md. 431; *Dunlap v. State*, 1 Md. App. 444; *Williams v. State*, 5 Md. App. 450, 458.

In a case tried before the court without a jury, the test as to whether the trial judge was clearly erroneous in reaching a verdict of guilty on the evidence is whether the admissible evidence adduced at the trial either showed directly, or circumstantially, or supported a rational inference of, the facts to be proved, from which he, as the trier of the fact, could fairly be convinced, beyond a reasonable doubt, of the appellant's guilt of the offense charged and due regard will be given to the opportunity

of the lower court to judge the credibility of the wit-
nesses. *Williams v. State, supra,* at 458; *Metz v. State,*
9 Md. App. 15, 23; Maryland Rule 1086.

On the facts of this case, we cannot say that the trial
judge was clearly erroneous.

*Judgment affirmed.*