## EVERHART *v.* STATE OF MARYLAND

[No. 44, September Term, 1974.]

*Decided April 14, 1975.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Fred R. Joseph,* with whom were *Feissner, Kaplan, Smith, Joseph, Greenwald & Laake* and *William R. Leckemby, Jr., Public Defender for Frederick County,* on the brief, for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

O'DONNELL, J., delivered the opinion of the Court.

The petitioner, Michael Ashton Everhart, the lessee of a farmhouse upon the Nathan Doody farm, upon his trial in the Circuit Court for Frederick County was found guilty by a jury (Judge Samuel W. Barrick presiding) of "maintaining a common nuisance" in violation of Maryland Code (1957, 1971 Repl. Vol.) Art. 27, § 286 (a)(5).[1] He also was convicted of possession of a controlled dangerous substance — marijuana — in violation of Art. 27, § 287 (a).[2]

Admitted into evidence at his trial were approximately 200 items, including various types of pipes for smoking marijuana, numerous scales, weights, eyedroppers, gelatin capsules and "Baggies," measuring spoons and syringes,

---

1. The statute makes it unlawful "to keep or maintain any common nuisance which shall mean any dwelling house, apartment, building, vehicle, vessel, aircraft, or any place whatever which is resorted to by drug abusers for purposes of illegally administering controlled dangerous substances or . . . storage or concealment of controlled dangerous substances or controlled paraphernalia, as defined in subsection (d) of § 287 . . . ."

2. He was sentenced to a term of three years upon his conviction for "maintaining a common nuisance" and a concurrent one year term was imposed upon his conviction for the possession of marijuana.

hypodermic needles, wire screens, homemade cookers, a quantity of marijuana, 78 growing marijuana plants, an assortment of colored pills, cigarette papers and two twenty dollar bills in an envelope, as well as cherry incense and incense candles. These items were seized on May 19, 1972, from the various bedrooms occupied by subtenants of Everhart, as well as from his quarters and the attic of the farmhouse, pursuant to a search and seizure warrant issued on May 11, 1972, by Judge Byron Thompson of the District Court. That warrant authorized the search of a 1966 Lincoln Continental automobile bearing Maryland registration KJ4872, registered to Jerry Wayne Lawson, Route 6, Frederick, Maryland, as well as a two-story gray dwelling with gray metal brick-type siding located approximately two-tenths miles south of State Route 26, approximately one mile east of State Route 194, on the property known as the Nathan Doody farm, Route 1, Frederick, Maryland.

The affidavit for the issuance of the warrant made by Sgt. Carl R. Harbaugh of the Maryland State Police set forth an abundance of probable cause as to the person of Jerry Wayne Lawson (a codefendant) and his 1966 Lincoln Continental. We are here concerned only with so much of the affidavit as relates to the establishment of probable cause for the search of the farmhouse. The only allegations in the affidavit purporting to relate thereto are as follows:

"That on May 2, 1972 Joe Lewis Petty, a known heroin addict, and distributor, was arrested and charged with several Breaking, Entering, and Larcenies; And

During the course of the investigation, while conversing with your Affiant and other State Police Officers the said Joe Lewis Petty stated he visited the aforesaid Jerry Wayne Lawson on May 1, 1972 *at the previously described two story dwelling, located on the Nathan Doody farm,* south of State Route 26, *in an effort to 'make a deal' concerning purchases of heroin;* And

That on May 4, 1972, Tfc. John W. Reburn,

Maryland State Police, and Detective Lieutenant Paul W. Mossburg, Frederick City Police Department, went to the aforesaid two story dwelling located on the Nathan Doody farm south of State Route 26 *and obtained a large amount of narcotic and restricted drugs that had been reported stolen from the Parkview Medical Center on May 3. 1972;* And

That the aforesaid Jerry Wayne Lawson was present at the aforementioned two story dwelling at the time officers obtained the stolen drugs; And

That on May 6, 1972 the previously mentioned past proven, confidential and reliable informant advised your Affiant that *prior to the arrival of the aforementioned* Tfc. John W. Reburn and Det. Lt. Paul W. Mossburg, the said Jerry Wayne *Lawson had sold heroin to a known drug user; . . . .*" (Emphasis supplied.)

Prior to the petitioner's trial he filed in the Circuit Court, pursuant to Maryland Rule 729 b 1 — after his indictment — a motion for suppression of the property seized under the warrant asserting, *inter alia,* (1) that there was no probable cause for its issuance, (2) that "the major factor in the application was the illegal search and seizure at the same residence on May 4, 1972," (3) that the defendant is not mentioned or named or incriminated in any manner by the application and (4) that the application failed "to satisfy the requirements of the Fourth Amendment to the United States Constitution."

In his attack upon the validity of the affidavit made in application for the search and seizure warrant counsel pointed out that so much of it as pertained to a visit unto the Nathan Doody farm on May 1st by Petty in an effort to purchase heroin from Lawson was a "bare allegation that he made an effort to make a deal" in that there was no showing that any such narcotics transaction ever took place at the farm; that so much of the affidavit as pertained to the purchase of heroin by a known informant from Lawson on

May 6, 1972, did not provide a sufficient basis for probable cause since it failed to set forth that such transaction had occurred at the farm. The principal thrust of the motion to suppress was addressed to the contention that an illegal warrantless search and seizure of the farmhouse had been conducted by the police on May 4, 1972, "in violation of the constitution"; that on that date, according to the police report, "they saw bags outside the house that indicated that they were similar bags to those stolen in a recent robbery of a clinic that contained drugs"; that the police entered the house and told Mr. Lawson, the only one present, that they "wanted to see Mr. Everhart," that they were "going to search the place whether you like it or not," asked direction to Everhart's room and had Lawson take them up to Everhart's room. He proffered the testimony of Lawson in support of these allegations and, citing *Wong Sun v. United States,* 371 U. S. 471 (1963), asserted that the police "cannot use the tainted evidence, the results of an illegal search and seizure to form probable cause for the new application for a warrant." He cited as well *Brown v. State,* 15 Md. App. 584, 292 A. 2d 762 (1972), as authority for his contention that Lawson was without authority to permit an inspection of Everhart's quarters, and *Coolidge v. New Hampshire,* 403 U. S. 443 (1971), concerning the need for a search warrant for the May 4th intrusion into the farmhouse.

Counsel for the petitioner repeatedly emphasized that the "search and seizure [of May 4th] represented the facts upon which the search warrant [of May 11th] was granted," that the evidence obtained from that illegal search and seizure cannot be used "to form the probable cause for this application for a warrant"; that the "illegal seizure in violation of the Fourth Amendment does not represent probable cause, it clearly taints everything . . . ." After again proffering the testimony of Lawson, the trial judge opined that it was not permissible to go beyond the "four corners" of the application for the search warrant.

Countering these contentions the State's Attorney, in his dialogue with the court, stressed the impermissibility of the court going outside the "four corners" of the application and,

in arguing that no testimony could be taken on the motion, contended that the court "has to assume the validity and trustworthiness of the statements made under affidavit by the officer who secured this warrant." Conceding that the farmhouse had been "searched" by the officers on May 4th, he argued that "what the officers saw from hallway looking into the room" — when they had seen a green bag in Everhart's room, and through that green bag could see a box of hypodermic needles, as well as having observed on the floor of his room a hypodermic syringe, a needle and a bloody piece of cotton — even though such evidence might be physically inadmissible, the officers' observations, as being within their plain and open view, were admissible. The State's Attorney additionally pointed out to the court that upon their visit to the premises on May 4th the officers had seized, outside the building, a quantity of drugs contained in the same type (green) bag which was "part of the garbage"; that the officers, having seen these items outside the building, "went inside" and that even though the trial court might strike down as not admissible in evidence some of the items seized on May 4th the court should not strike down that which was found outside the building "in the garbage [as] abandoned property" — which would be admissible in evidence. The State's Attorney conceded that if the seizure on May 4th had been pursuant to a search and seizure warrant which was subsequently shown to have been invalid a subsequent search warrant as the basis for the May 19th search and seizure might be tainted by a search under such an invalid warrant.

When, in rebuttal, counsel for the appellant contended that the "abandoned property" outside the premises did not contain drugs but referred to bags that had allegedly carried drugs, Judge Barrick again hypothetically asked whether or not he could take testimony as to facts outside the "four corners" of the application "if the judge who issued the search warrant is satisfied that [such facts] are true." In urging that he could, petitioner's counsel submitted that if in fact there "was a tainted search and seizure that that taint carries over to the application" for the search warrant.

By way of surrebuttal the State's Attorney vigorously urged that the determination of probable cause, under the holdings in *Henson v. State*, 236 Md. 518, 521, 204 A. 2d 516, 518 (1964), must be "determined by the judge or justice who issues the warrant, and if a prudent and cautious man would be justified from the facts presented to show its existence in believing that the offense had been or was being committed, the warrant properly may be issued," that the existence of "probable cause" cannot be controverted by testimony outside the "four corners" of the application for the search warrant and that upon the facts set forth there was sufficient probable cause for Judge Thompson to issue the search warrant.

Judge Barrick, satisfied that he "should not take any testimony and that [he] should review the application for the search warrant and make a decision of what appears in the four corners of the application," took the matter under advisement.

In a memorandum opinion denying the motion to suppress filed on September 29, 1972, the trial court recognized that "[t]he main thrust of the defendant's argument is that part of the narcotics and restricted drugs obtained on May 4, 1972, was the result of an illegal search and seizure and therefore, should not be used as a factor in the application and affidavit for the search warrant which was subsequently issued on May 11, 1972."

After pointing out the elements within the equation of "probable cause" and that in searching for its existence the lower court must look "only in the affidavit itself and may not go outside it," Judge Barrick concluded:

"Assuming without deciding that part of the drugs seized on May 4, 1972, are not admissible in evidence, that alone will not suffice in determining probable cause in the issuance of the search warrant. The inadmissibility of that part of the evidence at trial would not warrant the suppression of all the evidence on the theory that there was not probable cause for the issuance of the search

warrant. If we were to exclude that part of the evidence allegedly illegally seized, there is still more than ample facts in the application to establish probable cause for the issuance of the search warrant. The application and affidavit outlined numerous facts on which Judge Thompson had probable cause for affecting a search warrant for the 1966 Lincoln Continental and the dwelling located on the Nathan Doody farm."

In affirming the petitioner's conviction the Court of Special Appeals, in *Everhart v. State,* 20 Md. App. 71, 315 A. 2d 80 (1974), held that it was not "dealing with a proper invocation by the appellant of 'the fruit of the poisonous tree' doctrine," since "the very tentative effort to establish a primary taint was in no way preserved for appellate review." Quoting from an argumentative section of the petitioner's brief the court converted his contention to the question of the applicability of the exclusionary rule to an *ex parte, in camera* proceeding wherein a magistrate determines whether probable cause exists for the issuance of a search and seizure warrant. That court concluded that "the attack upon the warrant at the suppression hearing was confined to a review of its surface sufficiency and thus limited the issue before it to the precise question as to 'whether there was probable cause for the search of the "Nathan Doody farm" ' " — when the affidavit was submitted to Judge Thompson in the District Court on May 11th.

In its analysis of what it termed "three references" to the farm, the Court of Special Appeals — concerning the first reference — Petty's visit to Lawson on May 1, 1972 at the farm "in an effort to 'make a deal' concerning purchases of heroin" — found that the "basis of knowledge" prong and the "veracity" prong, under the holdings in *Aguilar v. Texas,* 378 U. S. 108 (1964), were satisfied; that Petty's statement appeared to be a genuine "declaration against penal interest" in satisfaction of the holdings in *United States v. Harris,* 403 U. S. 573 (1971), and that although the information set forth did not necessarily point to the farm as the hiding place of

the drugs which Lawson was purportedly selling, established "some nexus between Lawson himself and the farm." The court rejected the second reference to the farm — the report from a confidential and reliable informant made on June 6, 1972, that prior to the arrival of the officers "Lawson had sold heroin to a known drug user" — as not providing any basis for probable cause since no "basis of knowledge" for the reference to the farm was in any event set forth either explicitly or implicitly.

Concerning the third reference to the farm — the obtention by the police on May 4, 1972 of a large amount of narcotic and restricted drugs that had been stolen from the Parkview Medical Center on May 3, 1972 and the allegation that Lawson was present at the time of the recovery of those drugs — the Court of Special Appeals disagreed with Judge Barrick's conclusion that that evidence was "superfluous" and found that it was "legitimately in the probable cause equation" and within the "surface sufficiency of the existence of probable cause when the affidavit in application for the search and seizure warrant was submitted to the District Court judge."

After a discussion on the exclusionary rule and premising that the rule was neither "mandated," nor "desired" and its invocation was indeed inappropriate in that it had no place "when a magistrate makes his *ex parte*, in camera determination that the police application for a search warrant contains adequate probable cause," the court reached this conclusion. That although its holding was "restricted to a constitutional finding that the probable cause affidavit was not facially insufficient, and that the warrant-issuing magistrate is not required to raise *sua sponte* possible constitutional problems" intimated that the result may have been different "had the appellant adequately raised at the suppression hearing, and adequately preserved for appellate review, an effort to look behind 'the four corners of the affidavit' in order to establish some primary taint, and then to apply the exclusionary rule to the ostensible fruits of that ostensible taint." As an aside the court recognized that the doctrine of the "fruits of the

poisonous tree" on the one hand and what it sensed to be a "discernible and almost tidal retreat from the exclusionary rule by the Supreme Court" on the other hand — were in essential collision.

Parenthetically it must here be observed that the very same evidence which the petitioner contended tainted the affidavit for the search and seizure warrant and which was alluded to by both his counsel and the State's Attorney, in the suppression hearing before Judge Barrick, was passed upon by the Court of Special Appeals since that evidence was admitted in the trial of the case upon the merits.

Lt. Mossburg of the Frederick City Police Department in company with Trooper Reburn, went to the petitioner's tenant house on the evening of May 4, 1972; as they drove their car up to the side of the house they noticed an area where "trash bags were all piled in a heap." Noticing that one of the bags was "a light color bluish green plastic bag commonly used by medical people" the lieutenant opened it, inspected it and removed from it three separate boxes addressed to different physicians; one contained Dexamyl, another Phenergran Expectorant with Codeine and the third Doriden, a tranquilizer — all "controlled dangerous substances." He also recovered a needle, a syringe and three pieces of raw cotton with dark blood-like stains upon them.

After recovering these items from the plastic bag outside the house the officers entered and had Lawson, who lived in one of the rooms with his girlfriend, take them to the second floor and point out the room belonging to the petitioner. Although the prosecution did not undertake to introduce any physical evidence seized from the petitioner's room and did not offer into evidence any observations made by the lieutenant within the room, it elicited testimony that while standing in the hallway, looking into Everhart's room, the lieutenant saw a hypodermic needle, another piece of cotton with a red substance on it, some nondescript capsules lying on the floor, a green plastic bag similar to the one found in the trash area outside the house and boxes similar to those recovered from the trash bag outside which appeared to

have been the types of boxes which package medications and hypodermic needles.

With respect to the search of the plastic bag in an area "where trash bags were piled in a heap" and the seizure therefrom the Court of Special Appeals found that it was abandoned property, with no continuing property interest and no reasonable expectation of privacy in connection therewith and was thus outside the protection of the Fourth Amendment — and its admissibility was thus proper.

As to the second category of evidence obtained by the police on May 4th, the Court of Special Appeals found that the state had not met its burden to "demonstrate that the consent [by Lawson] was in fact voluntarily given, not the result of duress or coercion, express or implied," under the holdings in *Schneckloth v. Bustamonte*, 412 U. S. 218 (1973), and distinguishing the holdings in *Brown v. State*, 15 Md. App. 584, 292 A. 2d 762 (1972), concerning the "plain view" doctrine; that court concluded that although what Lt. Mossburg observed by his visual search from the portal of the petitioner's room was not properly admissible,[3] the court was convinced, beyond a reasonable doubt, that since such evidence was "merely cumulative" its admissibility had not contributed to the verdict of guilty and, under the holdings in *Chapman v. California*, 386 U. S. 18 (1967), held that its admission was "harmless error."

Upon this posture of the case we granted certiorari limited solely to the question: whether the petitioner was indicted, arrested and convicted on the basis of a search and seizure warrant issued without probable cause.

As a threshhold issue to our review of the case we reject the conclusion reached by the Court of Special Appeals that the petitioner's contention — that the search warrant was "tainted" by an unlawful search and seizure at the Nathan Doody farm — was not procedurally preserved for appellate review. In quoting a portion of the dialogue between

---

**3.** The conclusion reached by the Court of Special Appeals as to this "category" of evidence obtained from the Nathan Doody farmhouse on May 4th confirms the contention made by petitioner's counsel when, at the hearing, he proffered the testimony of Lawson.

petitioner's counsel and the hearing judge, as a basis for concluding that the petitioner had "acquiesced" in the refusal of the trial court to receive from Lawson the proffered testimony the Court of Special Appeals, by ellipsis, omitted from the quoted dialogue the prefatory remarks of counsel that he did not want "to drive this point into the ground," but that "the only other thing they have is this large seizure of drugs on May 4th, which once again we feel is certainly in violation of the Constitution and clearly contravenes the philosophy and principles espoused by the Court of Special Appeals in the *Brown* case [*Brown v. State*, 15 Md. App. 584, 292 A. 2d 762 (1972)]." It was this statement by counsel which immediately preceded his quoted comment that "it would be helpful if the court wishes to hear from Mr. Lawson as to what happened on the May 4th date that we should put it in the record."

Nor do we agree that the quoted portion of counsel's dialogue with the trial court, at the very end of the hearing on the motion — after 30 pages of argument and proffer — constitutes an "even more diffident" surrender, or waiver, of the thrust of the objection made by the petitioner. Judge Barrick in his memorandum denying the motion specifically recognized that: "The 'main thrust' of the defendant's argument is that part of the narcotics and restricted drugs obtained on May 4, 1972, was the result of an illegal search and seizure and therefore, should not be used as a factor in the application and affidavit for the issuance of the search warrant which was subsequently issued on May 11, 1972." In no wise did Judge Barrick consider that this "main thrust" had been either abandoned or waived.

We do not believe that the quoted portion of the dialogue between counsel and the trial court can be equated with an acquiescence in the ruling, since the court had repeatedly pointed out that it could not take evidence which went beyond the "four corners" of the application for the warrant; it seems to us that counsel's comments evidenced only a deferential respect and an acknowledgment that he understood the court's ruling and the court's concept of the law. To belabor his point might have shown conduct which could be considered contumacious.

Our independent review of the entire proceedings on the motion — set forth at some length, *supra* — convinces us that the "taint" issue raised by petitioner was properly preserved. Maryland Rule 729 g 2 provides that a "pre-trial ruling, denying a motion or petition to suppress, exclude or return property seized, shall in any event be reviewable on appeal to the appropriate appellate court . . . ." *See Mace Produce Co. v. State's Attorney,* 251 Md. 503, 509, 248 A. 2d 346, 350 (1968); *Cleveland v. State,* 8 Md. App. 204, 259 A. 2d 73 (1969), *cert. denied,* 257 Md. 732 (1970). Additionally petitioner clearly made known to the hearing judge the action which he desired the court to take and the reasons therefor. *See Brice v. State,* 254 Md. 655, 255 A. 2d 28 (1969); *Caviness v. State,* 244 Md. 575, 224 A. 2d 417 (1966); he also made a proffer upon the record concerning the nature of the testimony to be submitted by Lawson and the hearing judge rejected its admissibility. *See Leitch v. Board of Education,* 248 Md. 611, 616, n. 1, 237 A. 2d 748, 751, n. 1 (1968); *Fowler v. Benton,* 229 Md. 571, 575, 185 A. 2d 344, 347 (1962).

We postulate our review of so much of the affidavit as may relate to the existence of probable cause for the search of the Nathan Doody farm upon the premise that if an affidavit for a search and seizure warrant contains improper information which should not be considered by the court, the court is nonetheless justified in issuing the warrant if additionally the affidavit contains within it sufficient proper information to show the existence of probable cause. *Tucker v. State,* 244 Md. 488, 498, 224 A. 2d 111, 116-17 (1966), *cert. denied,* 386 U. S. 1024 (1967); *Shrout v. State,* 238 Md. 170, 175, 208 A. 2d 585, 588 (1965); *Adams v. State,* 200 Md. 133, 139, 88 A. 2d 556, 559 (1952); *Kapler v. State,* 194 Md. 580, 587-88, 71 A. 2d 860, 863 (1950); *Bratburd v. State,* 193 Md. 352, 357, 66 A. 2d 792, 794 (1949). We thus will review — as did the Court of Special Appeals — each of the "three references" to the farm.

In our review we are concerned with whether or not reasonable grounds existed at the time of the affidavit and the issuance of the warrant for a belief that the law was being violated upon the premises to be searched and if the

apparent facts set forth in the affidavit are such that a reasonably discreet and prudent man would be led to believe that there was a commission of the offense charged. *State v. Edwards,* 266 Md. 515, 519, 295 A. 2d 465, 467 (1972), quoting with approval from *Dumbra v. United States,* 268 U. S. 435 (1925). *See also Henderson v. State,* 243 Md. 342, 344, 221 A. 2d 76, 77 (1966); *Henson v. State,* 236 Md. 518, 521, 204 A. 2d 516, 518 (1964).

We disagree with the resolution by the Court of Special Appeals in its analysis concerning the "first reference" to the farm — the recitation that Petty, on May 1st, had visited the farm *"in an effort to 'make a deal'* concerning purchases of heroin." (Emphasis supplied.) Other allegations in the affidavit which independently set forth an abundance of probable cause concerning Lawson and his 1966 Lincoln Continental established that he was selling heroin from that vehicle and had made sales from it while parked on the parking lot of a Frederick bowling alley. Lawson's address was listed as on Route 6, Frederick County, Maryland. Although the lower court found that this "reference" established "some nexus between Lawson himself and the farm," the court also found that this information did not point to the farm "as the hiding place or 'stash' of the contraband drugs." No other allegation in any way connects Lawson or his vehicle with the farm. This "reference" appears to us to be per se factually innocuous; if anything, it might persuade a reasonably prudent and cautious person to conclude — since Petty was unable to "make a deal" — that no heroin was being stored, or sold, or had ever been sold at the Nathan Doody farm. Giving rise to no more than a suspicion or possibility, such "reference" cannot provide any basis to believe that the law was being violated on those premises. *See Davids v. State,* 208 Md. 377, 118 A. 2d 636 (1955); *DeAngelo v. State,* 199 Md. 48, 85 A. 2d 468 (1952); *Gorman v. State,* 161 Md. 700, 158 A. 903 (1932). *See also United States v. Bailey,* 458 F. 2d 408 (9th Cir. 1972). *Compare State v. Kraft,* 269 Md. 583, 614-16, 307 A. 2d 683, 698-99 (1973), where, in addition to an allegation that "a known and convicted heroin user was seen at this

apartment," the affidavit was fortified by the observations of two informants who had seen large quantities of LSD in the apartment, and yet a third informant had purchased LSD and other narcotics from the lessee of the apartment; and *State v. Edwards, supra,* where an informant, visiting Edwards' premises had been told that "some good stuff" had arrived but that "it would be a while before [Edwards] could do anything for the [informant]," and where additionally the informant, while upon Edwards' premises, observed in detail paraphernalia customarily used in the measuring and packaging of heroin. 266 Md. at 524-25, 295 A. 2d at 469-70.

We agree with the analysis and conclusion reached by the Court of Special Appeals concerning what it termed the "second reference to the farm" — the recitation that on May 6, 1972, an informant had advised the affiant that prior to the arrival of Trooper Reburn and Lt. Mossburg Lawson had sold heroin to a known drug user. We agree that the informant's "basis of knowledge" under *Aguilar v. Texas, supra,* "for the reference to the farm was in no event set forth either explicitly or implicitly" and thus cannot be considered as being within the probable cause determination. Indeed, it might be additionally observed that the reference is semantical in that, although it relates to an incident, apparently prior to the arrival of the officers on May 4th, at the farm, it nowhere states therein that Lawson had sold heroin "to a known drug user" in, upon or at the farm.

With both these references removed as bases for establishing probable cause we are thus confronted solely with the third reference in the affidavit for the warrant which recites the seizure by the police of narcotic and restricted drugs at the Nathan Doody farm on May 4, 1972 — concededly in a warrantless search.

In *Schneckloth v. Bustamonte, supra,* cited by the Court of Special Appeals in connection with Lawson's purported consent for the police to search the farmhouse, Mr. Justice Stewart, who delivered the opinion for the Court, stated:

"It is well settled under the Fourth and

Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.' *Katz v. United States*, 389 U. S. 347, 357; *Coolidge v. New Hampshire*, 403 U. S. 443, 454-455; *Chambers v. Maroney*, 399 U. S. 42, 51. It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. *Davis v. United States*, 328 U. S. 582, 593-594; *Zap v. United States*, 328 U. S. 624, 630. . . ." 412 U. S. at 219.

" 'Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause.' " *Coolidge v. New Hampshire*, 403 U. S. 443, 451 (1971), quoting with approval from *Agnello v. United States*, 269 U. S. 20, 33 (1925). *See also Jones v. United States*, 357 U. S. 493, 497-98 (1958); *Silverthorne Lumber Co. v. United States*, 251 U. S. 385, 392 (1920). This same principle was enunciated by this Court as early as 1952 in *Griffin v. State*, 200 Md. 569, 573, 92 A. 2d 743, 745, *cert. denied*, 345 U. S. 907 (1953).

In *Beale v. State*, 230 Md. 182, 186 A. 2d 213 (1962), when a police· officer at the appellant's front door demanded admittance to her apartment she threw narcotics paraphernalia out her back window into the rear yard where a second policeman was standing within that hedge-enclosed portion of the premises. Picking up the thrown objects and identifying one of them as a hypodermic needle he yelled this fact to his partner still awaiting entrance at the front door. That officer then "kicked the door open" and went into the apartment where he found the appellant in possession of a marijuana cigarette.

This Court, in finding that the officer who had stationed himself in the back yard was a trespasser and that his partner who had entered the front door had become a

trespasser, reversed the appellant's conviction upon a finding that the seizure of the jettisoned materials was clearly illegal and its admissibility into evidence was error.

Judge Horney, who delivered the opinion of the Court, stated:

"In *Gorman v. State*, 161 Md. 700, 158 Atl. 903 (1932), where the facts and circumstances were similar to those in the case at bar, a police officer, having seen a number of persons entering and leaving the house of the defendant, suspected a violation of the lottery laws and entered the house through an open door, without either a warrant to search the premises or to arrest the defendant, and took possession of the gambling paraphernalia he found there. In holding that such evidence was procured by an illegal search and seizure, even though the officer had not found it necessary to break open the door, it was said (at p. 704) that 'the bursting open of the door was not the essence of the offense; it was the invasion of the privacy of the defendant's home, [for] under the facts and circumstances stated, the officer was * * * a trespasser in entering the house of the defendant.' See also *McDonald v. United States*, 335 U. S. 451 (1948), where it was held that evidence obtained by trespassing officers should have been excluded. . . .

The case of *Mattingly v. Commonwealth*, 247 S. W. 938 (Ky. 1923), though not directly in point, is likewise authority for the proposition that officers wrongfully on the premises of a suspect may not lawfully search his premises and seize such illegal possessions as they may find there. In that case, where officers, who were in an enclosure near a house with a warrant that was ineffective because it was based on insufficient affidavits, looked through a window and obtained certain information before forcibly entering the house, the Court of Appeals of Kentucky held that the information

thus received, as well as that obtained after entering the house, was inadmissible in evidence." 230 Md. at 185-86, 186 A. 2d at 215.

In concluding that the seizure of the contraband in the back yard by the intruding police officer was illegal this Court, quoting with approval from *Hobson v. United States,* 226 F. 2d 890 (8th Cir. 1955), held that "the back yard was part of the curtilage surrounding the dwelling."

In *Wanzer v. State,* 202 Md. 601, 97 A. 2d 914 (1953), a State Trooper, from a nearby road, looking through a picket fence, about 100 yards from the defendant's residence, saw about 40 or 50 people, many holding cans of beer, "milling around" on the defendant's lawn. He also heard "loud dance music and laughter." Accompanied by a neighbor, a local police officer and a Justice of the Peace (who accompanied the Trooper to sign arrest warrants) he entered the property through the front gate; some of the "guests" were arrested for "alleged disturbance of the peace." On the lawn the Trooper saw a roulette wheel lying near an improvised gambling table. The "raiding party" then entered and searched the out buildings, as well as the dwelling, finding evidence which was sufficient to show violations of both the gambling and liquor laws.

In an opinion written by Chief Judge Sobeloff this Court, after finding that when the police went upon the property there was no probable cause to believe that the common law misdemeanor of "breach of the peace" was being committed, held that the entrance of the police on the appellant's lawn — upon the "curtilage" surrounding the dwelling house — and then into the house was unlawful and that the seizures made by them while so trespassing were illegal.

*Compare Harris v. State,* 203 Md. 165, 99 A. 2d 725 (1953), where the Court, observing that "the mere absence of a physical barrier, such as a fence or door or gate is not conclusive of the question of whether an alley or passageway is part of the curtilage," found that the police officer, in making observations, upon which he applied for a search and seizure warrant, was upon a passageway which had a

common use. *Compare also Davis v. State,* 236 Md. 389, 204 A. 2d 76 (1964), *cert. denied,* 380 U. S. 966 (1965), in which this Court held that there was no illegality compelling the suppression of evidence from within a house, where the police found a body lying in debris in the yard, a trail of blood and scuffed grass led to the rear door of the premises, and a policeman, after receiving no response to a knock upon the door, noticed through a window a "pair of human feet" (belonging to the defendant) then lying on a couch. Because their duties mandated an investigation to determine whether or not more than one had been victimized in the carnage, as well as the possibility that the person observed might need immediate aid, such exigent circumstances were held to preclude the police from being "trespassers upon the curtilage" and were considered "paramount to the constitutional demand of a search warrant as a condition precedent to the invasion of the privacy of a dwelling house."

In a companion case, decided herewith, *Carter v. State,* 274 Md. 411, 337 A. 2d 415 (1975), we held that Carter, who, upon a motion to suppress evidence obtained pursuant to a search and seizure warrant for his apartment, asserted that the allegations set forth in the affidavit for the warrant had been obtained through the employment by the police of illegal electronic surveillance, and proffered evidence in support of that contention, was entitled to an evidentiary hearing for the purpose of determining whether or not the allegations set forth in the affidavit were "tainted" and had been derived from and through an illegal electronic surveillance.

In doing so, we did not diminish the viability of our rule proscribing any controversion of the *truth* of the grounds stated in an affidavit in application for a search and seizure warrant, as originally announced in *Smith v. State,* 191 Md. 329, 335-36, 62 A. 2d 287, 289-90 (1948), *cert. denied,* 336 U. S. 925 (1949), and followed in a long series of cases, set forth in *Carter,* including *Tucker v. State,* 244 Md. 488, 499-500, 224 A. 2d 111, 117-18 (1966), *cert. denied,* 386 U. S. 1024 (1967). It was this rule which Judge Barrick applied when, in not accepting the proffered testimony, he held that the court

must confine itself to the affidavit itself and may not go outside its "four corners" in determining the existence of probable cause.

By our holdings in *Carter* we have engrafted an exception upon the rule so as to permit, in a proper case, an inquiry as to the legality of the *source* of the data set forth in an affidavit in application for a search warrant. Thus, in such a case, inquiry may be made beyond the "four corners" of the affidavit. *See Clark v. Commonwealth,* 288 Ky. 845, 157 S.W.2d 485 (1941), citing *White v. Commonwealth,* 221 Ky. 535, 299 S. W. 168 (1927), which we quoted with approval in *Carter, supra. See also Brooks v. State,* 13 Md. App. 151, 154-56, 282 A. 2d 516, 518-19 (1971), *cert. denied,* 264 Md. 746, 749, 750 (1972); and *Frankis v. State,* 11 Md. App. 534, 275 A. 2d 532 (1971) (search warrants dependent upon validity of prior warrants).

Although our holdings in *Carter v. State, supra,* were predicated upon his contention — and proffer — that the information set forth in the application for the search warrant was obtained in violation of the provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as codified in 18 U.S.C. §§ 2510-2520, as well as through an illegal "invasion of his privacy" within the protection of the Fourth Amendment to the United States Constitution, we do not think that Everhart's contention — and proffer — directed only to an unlawful search and seizure at the farmhouse on May 4, 1972 requires any different result.

In applying the criteria laid down by the Fourth Amendment and as established by the opinions of the United States Supreme Court applying that Amendment, as prescribed in *Ker v. California,* 374 U. S. 23, 33-34 (1963), we find that the holdings in *Silverthorne Lumber Co. v. United States, supra,* in *Nardone v. United States,* 308 U. S. 338 (1939), in *Wong Sun v. United States,* 371 U. S. 471 (1963),[4]

---

4. Although in the majority opinion in Prescoe v. State, 231 Md. 486, 191 A. 2d 226 (1963) (Brune, C. J., dissenting) and in the majority opinion in Mefford v. State, 235 Md. 497, 201 A. 2d 824 (1964) (Brune, C. J. and Prescott, J., dissenting), *cert. denied,* 380 U. S. 937 (1965) — in each of

and in *Alderman v. United States,* 394 U. S. 165 (1969), as explicated in *Carter v. State, supra,* compel the conclusion that if data set forth as a basis for the existence of probable cause in an application for a search warrant, was come upon or derived as a result of an illegal search and seizure, such primary illegality — in the absence of evidence of attenuation or a source independent of such "taint" — precludes the use of such derivative evidence from being a valid basis for establishing the existence of probable cause, under the doctrine of the "fruit of the poisonous tree."

As was stated by Mr. Justice White in writing for the majority in *Alderman v. United States, supra,* quoted with approval in *Carter v. State, supra:*

> "If the police make an unwarranted search of a house and seize tangible property belonging to third parties — even a transcript of a third-party conversation — the homeowner may object to its use against him, not because he had any interest in the seized items as 'effects' protected by the Fourth Amendment, but because they were the fruits of an unauthorized search of his house, which is itself expressly protected by the Fourth Amendment. *Nothing seen or found on the premises may legally form the basis* for an arrest or *search warrant* or for testimony at the homeowner's trial, since the prosecution would be using the fruits of a Fourth Amendment violation. *Silverthorne Lumber Co. v. United States,* 251 U. S. 385 (1920); *Johnson v.*

---

which the holdings in Wong Sun v. United States were rejected upon a contention that an illegal arrest had rendered inadmissible a subsequent confession, where the evidence established that the confession was factually shown to have been freely and voluntarily elicited — there is dicta that Wong Sun "involved a federal prosecution, not a state one," and "that Wong Sun was not intended to, and does not control prosecutions in state courts," in view of the holdings of the United States Supreme Court in Alderman v. United States, 394 U. S. 165 (1969), citing Wong Sun in connection with a violation of the Fourth Amendment, and the statement by that Court in Michigan v. Tucker, 417 U. S. 433, 445 (1974), that "[t]his Court has also said, in Wong Sun v. United States, 371 U. S. 471 (1963), that the 'fruits' of police conduct which actually infringe a defendant's Fourth Amendment rights must be suppressed," such statements would now appear to have been erroneously gratuitous observations.

*United States*, 333 U. S. 10 (1948); *Wong Sun v. United States*, 371 U. S. 471 (1963)." (Emphasis supplied.) 394 U. S. at 176-77.

*See also McGinnis v. United States*, 227 F. 2d 598 (1st Cir. 1955), cited with approval in *Wong Sun v. United States, supra*, where, based solely upon observations made by an illegal search of premises, an agent obtained a search and seizure warrant for the same premises and the Court stated:

"A [police] agent cannot participate in an unlawful search, and then on the basis of what he observed in the course of that search, and on that basis alone, go to a [magistrate] and swear out a search warrant. Such a search warrant, and the evidence procured in the course of a search thereunder, would be merely the illegal product of a previous unlawful search by the [police] authorities. See Silverthorne Lumber Co., Inc. v. United States, 1920, 251 U. S. 385, 40 S. Ct. 182, 64 L. Ed. 319; Fraternal Order of Eagles, No. 778 v. United States, 3 Cir., 1932, 57 F. 2d 93. See also Johnson v. United States, 1948, 333 U. S. 10, 68 S. Ct. 367, 92 L. Ed. 436." 227 F. 2d at 603-04.

*See also in accord Hair v. United States*, 289 F. 2d 894 (D.C. Cir. 1961).

The weight of authority in the state courts supports the view that evidence derived as a result of a prior illegal search or seizure, or knowledge gained through such a search and seizure, cannot be used as a valid basis to justify the existence of probable cause in a subsequent application for a search and seizure warrant. *See People v. Martin*, 382 Ill. 192, 46 N.E.2d 997 (1942); *People v. Scaramuzzo*, 352 Ill. 248, 185 N. E. 578 (1933); *Simmons v. State*, 277 P. 2d 196 (Okla. Crim. 1954). *See also* Annot., *Search and Seizure*, 143 A.L.R. 135-40 (1943); Annot., *Evidence — Unlawful Search and Seizure*, 50 A.L.R.2d 531, 569 (1956).

The doctrine of the "fruit of the poisonous tree" extends the scope of the exclusionary rule to bar not only evidence directly seized, but also evidence indirectly obtained as a

result of information learned or leads obtained in the unlawful search; in its broadest sense it prohibits the prosecution from using in any manner, prejudicial to the accused, information derived from facts learned as a result of the unlawful acts of law enforcement agents. Once a defendant, with requisite standing, has timely and factually asserted that the challenged evidence was derived from information obtained in an unlawful search and seizure, the court must afford him an opportunity to explore in detail the circumstances under which the evidence was acquired; if the defendant establishes that the evidence resulted from an unlawful search and seizure such evidence cannot be used at all unless the prosecution can convince the trial court that it had an independent origin or that the information gained in the unlawful search did not lead directly or indirectly to the discovery of the challenged evidence. *See* Annot., *Evidence — "Fruit of the Poisonous Tree,"* 43 A.L.R.3d 385, 389, 393, 396-407 (1972). *See also* R. Maguire, *How to Unpoison the Fruit — The Fourth Amendment and the Exclusionary Rule,* 55 J.Crim.Law, Criminology, and Police Science, 307 (1964). For cases similar to the facts here where the doctrine has been applied, *see United States v. Paroutian,* 299 F. 2d 486 (2d Cir. 1962); *Commonwealth v. Spofford,* 343 Mass. 703, 180 N.E.2d 673 (1962).

Although we agree with the conclusion reached by the Court of Special Appeals — and the petitioner so concedes — that the "warrant-issuing magistrate is not required to raise, *sua sponte,* possible constitutional problems" which might appear from the face of the application, it is clear that upon such a motion to suppress which, after indictment, pursuant to Maryland Rule 729 b 1, must be filed "in the court having criminal trial jurisdiction" — it is incumbent upon the hearing judge in determining the existence of probable cause to grant the movant an evidentiary hearing and in passing upon the existence of probable cause must exclude from that equation such information as shown to have had its origin in such primary illegality. We thus find that it was error, under the facts in this case, for Judge Barrick to have limited his review to the "four corners" of

the affidavit, we must, under our holdings in *Gill v. State,* 265 Md. 350, 289 A. 2d 575 (1972) and in *Carter v. State, supra,* set aside and reverse the judgments and order a new trial.

Since the Court of Special Appeals found — as to the "second category" of evidence obtained on May 4th — that the "tour de force" by the officers under the escort of Lawson, not shown to be by his consent, when they made their visual search of Everhart's quarters, constituted "intrusive observations" resulting from an unlawful search,[5] it appears that upon remand the trial court in the evidentiary hearing to be afforded the petitioner in its inquiry concerning primary illegality, need not go beyond the "first category" — the search of the "light color bluish green plastic bag" observed by the officers, by the side of the farmhouse, and the removal from it of physical evidence. This is so because upon our examination of the record we cannot conclude as a matter of law that these items were in fact "abandoned property," nor are we able to conclude whether or not at the time of such search and seizure the officers were upon the curtilage or were invading an area in which the petitioner had a legitimate expectation of privacy. Without question, abandoned property does not fall within that category in which one has a legitimate expectation of privacy to bring it within the protection of the Fourth Amendment,[6] but whether property is abandoned is generally a question of fact based upon evidence of a combination of act and intent. *See Parman v. United States,* 399 F. 2d 559 (D.C. Cir.) (Burger, J.), *cert. denied,* 393 U. S. 858 (1968).

In *Abel v. United States,* 362 U. S. 217 (1960), evidence seized from a wastebasket in a hotel room after the petitioner had vacated the room was found to "have been abandoned." In *Henderson v. Warden,* 237 Md. 519, 206 A. 2d

---

**5.** We cannot conclude, as did the Court of Special Appeals, that this evidence was "merely cumulative" and thus "harmless error," since it appears to us that the search of the farmhouse went to the crux of the question of whether or not Everhart was maintaining the building as a "common nuisance."

**6.** *See* J. Varon, Searches, Seizures and Immunities, at 591 (2d ed. 1974).

793 (1965) (where the defendant, while being chased by the police, threw a packet of narcotics into a churchyard), and in *Matthews v. State*, 237 Md. 384, 206 A. 2d 714 (1965) (where the defendant, again while being chased by the police, threw three brown envelopes which contained incriminating evidence under an automobile parked on a public street), the jettisoned materials were in each case held to have been "abandoned." *See also Hester v. United States*, 265 U. S. 57 (1924) (where the defendant, being pursued by revenue officers, in an open field, dropped the jug of whiskey which he was "toting"). However, in *Work v. United States*, 243 F. 2d 660 (D.C. Cir. 1957), the placing of a phial under the porch of a house was held to have been a concealment upon protected premises and not an abandonment, and in *Hobson v. United States*, 226 F. 2d 890 (8th Cir. 1955), cited with approval and followed by this Court in *Beale v. State, supra,* the discard of a package of narcotics into the backyard (a part of the curtilage) of a dwelling house was held not to be an abandonment. The holdings of the Supreme Court of California in *People v. Edwards*, 71 Cal. 2d 1096, 80 Cal. Rptr. 633, 458 P. 2d 713 (1969), seem to be particularly applicable since they involve facts virtually identical with those here. In that case police, with information from a neighbor that he had seen marijuana in a bag in the back of the house, entered the "open backyard area" of the defendant's residence and searched the contents of a trash can situate two to three feet from the door of the rear porch of the dwelling. The California Court, after an extensive review of the authorities, both federal and state, and concluding that the "defendants' reasonable expectation of privacy was violated by unreasonable governmental intrusion," held such search and seizure unlawful and found that the marijuana in the trash can had not been abandoned.

The curtilage is as much to be protected against unlawful searches and seizures without a warrant as the dwelling itself. *See Hobson v. United States, supra.* "Houses," as within the protection of the Fourth Amendment, include the curtilage. *Rosencranz v. United States*, 356 F. 2d 310 (1st

Cir. 1966). *In accord Roberson v. United States,* 165 F. 2d 752 (6th Cir. 1948). The curtilage includes the yard around a farmhouse. *Kroska v. United States,* 51 F. 2d 330 (8th Cir. 1931). A yard or lawn is considered within the protection of the curtilage and the mere absence of a physical barrier such as a fence, gate or hedge is not conclusive. *See Beale v. State, supra; Wanzer v. State, supra;* and *Harris v. State, supra.* An area searched near a pond on a farm which was several hundred yards away from the curtilage, although searched by a trespass, was held not to be within a protected area. *See United States v. Swann,* 377 F. Supp. 1305 (D. Md. 1974). *In accord United States v. Minton,* 488 F. 2d 37 (4th Cir. 1973), *cert. denied,* 416 U. S. 936 (1974). In *United States v. Wolfe,* 375 F. Supp. 949 (E.D. Pa. 1974), police removed trash from a pile on defendants' backyard along an areaway; citing *Fulbright v. United States,* 392 F. 2d 432 (10th Cir. 1968), that court, recognizing that the Fourth Amendment reference to "houses" included as well their curtilage, nonetheless found that the area in question belonging to business premises could not be considered as within the curtilage.

In *Fixel v. Wainwright,* 492 F. 2d 480 (5th Cir. 1974), the "plain view" doctrine was held insufficient to justify a warrantless search upon the curtilage when the officers entered the backyard of an apartment building, and such search was held to be in violation of the Fourth Amendment.

The Supreme Court, however, no longer seems to speak concerning the "curtilage" as opposed to "an open field" and in *Katz v. United States,* 389 U. S. 347 (1967), cited with approval in *Carter v. State, supra,* rejected the "trespass doctrine" as being necessary for an invocation of the Fourth Amendment. There, pointing out that that amendment "protects people, not places," the Court stated "what [one] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected" (389 U. S. at 351-52); and made "clear that the reach of that [Fourth] Amendment cannot turn upon the presence or absence of a physical intrusion into any given enclosure." 389 U. S. at 353. Evolving from the holdings in *Katz* is a protection within the

Fourth Amendment of an area within which "one has a legitimate expectation of privacy," as we pointed out in *Carter v. State, supra. See United States v. United States District Court,* 407 U. S. 297 (1972); *Alderman v. United States, supra. See also Recznik v. City of Lorain,* 393 U. S. 166 (1968); *Mancusi v. DeForte,* 392 U. S. 364 (1968). Thus, although it might seem more nearly constitutionally accurate that inquiry be made as to whether the place, adjacent to the farmhouse, where the search and seizure was made from the plastic bag, was within an area where Everhart had a reasonably "legitimate expectation of privacy," it would seem, a fortiori, that if there was an intrusion geographically within the curtilage it would be within such a protected area, notwithstanding that such plastic bag may have been within the officers' plain view.

Upon remand it will be necessary for the trial court to make a finding, in accordance with these principles, as to whether or not the search and seizure of the plastic bag was within the protection of the petitioner's rights under the Fourth Amendment.

Although no motion to dismiss the indictment was made, we included, within the scope of our writ of certiorari, the question as well of whether the petitioner was indicted and arrested on the basis of a search and seizure warrant without probable cause. The evidence disclosed that Everhart was not at the Nathan Doody farmhouse when, on May 19, 1972, the search and seizure warrant issued on May 11, 1972 was executed. The docket entries disclose that he was both presented and indicted by the grand jury on June 22, 1972, and upon a capias issued pursuant to that presentment was arrested on June 29, 1972. Although in *State v. Siegel,* 266 Md. 256, 292 A. 2d 86 (1972), *aff'g State v. Siegel,* 13 Md. App. 444, 285 A. 2d 671 (1971), this Court sustained the dismissal of an indictment because of an invalid order authorizing an electronic surveillance, it seems clear under the decisions of the United States Supreme Court that "a defendant is not entitled to have his indictment dismissed before trial simply because the government 'acquire[d] incriminating evidence in violation

of the [law],' even if the 'tainted evidence was presented to the grand jury.' " *Gelbard v. United States*, 408 U. S. 41, 60 (1972), citing *United States v. Blue*, 384 U. S. 251, 255 (1966). *See also Lawn v. United States*, 355 U. S. 339 (1958); *Costello v. United States*, 350 U. S. 359 (1956).

More recently the United States Supreme Court in *United States v. Calandra*, 414 U. S. 338 (1974), in a majority opinion by Mr. Justice Powell stated:

> "The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence, *Costello v. United States, supra; Holt v. United States*, 218 U. S. 245 (1910); or even on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination, *Lawn v. United States*, 355 U. S. 339 (1958)." 414 U. S. at 344-45.

Although in *Calandra* the respondent had been subjected to an unconstitutional search and seizure, he was before a grand jury as a witness, under an offer of a grant of immunity, and even though the Court held that as such a witness he could not refuse to answer questions before the jury on the ground that they were based on evidence obtained from him as a result of an unlawful search and seizure, recognized nonetheless that "[i]n the usual context of a *criminal trial*, the *defendant* is entitled to the suppression of, not only the evidence obtained through an unlawful search and seizure, but also any derivative use of that evidence. The prohibition of the exclusionary rule must reach such derivative use if it is to fulfill its function of deterring police misconduct." (Emphasis supplied.) 414 U. S. at 354.

Since the petitioner's arrest was based only upon his presentment and indictment by the grand jury and even the

submission unto the grand jury of evidence obtained in violation of his constitutional rights would not impair the validity of his indictment, we must equally conclude that the alleged taint of the evidence set forth in the application for the search warrant had no bearing upon the legality of his arrest. As we see it, the only proper manner in which to present the issue raised by the petitioner was — as he did — through a motion to suppress filed in the court which had "criminal trial jurisdiction" over the indictments returned against him. .

In view of the impact of our decision upon the well emplanted prior practice, which has heretofore limited the scope of judicial inquiry in .motions attacking search and seizure warrants; and in order to avoid what might otherwise become ".fishing expeditions" in delay of the orderly administration of criminal justice, we here construe Maryland Rule 729 to require that all such motions to suppress, or petitions when asserting an alleged illegal source of the information set forth as the basis for probable cause, be supported by precise and specific factual averments and not conclusionary allegations.

> *Judgment of the Court of Special Appeals reversed; case remanded to that court with directions to reverse the judgments of the Circuit Court for Frederick County and remand the case for a new trial; costs to be paid by Frederick County, Maryland.*