24 A.3d 678

**STATE of Maryland**

v.

**Helen L. HOLTON.**

**No. 91, Sept. Term, 2010.**

Court of Appeals of Maryland.

July 13, 2011.

532

Emmet C. Davitt, State Prosecutor and Thomas M. McDonough, Deputy State Prosecutor (Robert A. Rohrbaugh, State Prosecutor, and Shelly S. Glenn, Senior Assistant State Prosecutor, Office of the State Prosecutor, Towson, MD) on brief, for Petitioner.

Joshua R. Treem (Nicholas J. Vitek of Schulman, Treem & Gilden, PA, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

MURPHY, J.

In a four-count indictment returned by a Baltimore City Grand Jury, Helen L. Holton, Respondent, was charged with bribery, malfeasance in office, nonfeasance in office, and perjury. The Circuit Court for Baltimore City granted her motion

to dismiss those charges on the ground of legislative privilege. After that ruling was affirmed by the Court of Special Appeals in *State v. Holton,* 193 Md.App. 322, 997 A.2d 828 (2009), the State filed a petition for writ of certiorari in which it presented two questions for our review:

I. DID THE COURT OF SPECIAL APPEALS ERR IN HOLDING THAT THE COMMON LAW PROHIBITS THE USE OF EVIDENCE OF LEGISLATIVE ACTS OF A *LOCAL* OFFICIAL IN A *STATE* CRIMINAL PROSECUTION?

II. DID THE COURT OF SPECIAL APPEALS ERR IN HOLDING THAT § 5–501 OF THE COURTS AND JUDICIAL PROCEEDINGS ARTICLE PROVIDES LEGISLATIVE IMMUNITY TO *LOCAL* OFFICIALS IN *STATE* CRIMINAL PROSECUTIONS OTHER THAN PROSECUTIONS FOR DEFAMATION?

(Emphasis in original).

We granted the State's petition. 416 Md. 272, 6 A.3d 904 (2010). The first question presented, although interesting, is moot. For the reasons that follow, we answer "no" to the second question and therefore affirm the judgment of the Court of Special Appeals.

### Background

The indictment at issue includes the following assertions:

The Grand Jurors of the State of Maryland for the City of Baltimore do on their oath present:

### FACTS COMMON TO ALL COUNTS

\* \* \*

8. Prior to January 2007, Helen L. Holton served as Chairperson of the Economic Development and Public Financing Subcommittee and commencing on or after January, 2007, Helen L. Holton served as the Chairperson of the Taxation and Finance Committee.

9. At all times pertinent, as a member of the Baltimore City Council, Helen L. Holton was prohibited by the Baltimore City Ethics Ordinance from soliciting or accepting gifts from any person seeking to do business, in any amount with the Baltimore City Council, or engaged in activity regulated or controlled by the Baltimore City Council, or with a financial interest that might be substantially and materially affected, in a manner distinguishable from the public generally, by the performance or non-performance of her official duties.

\* \* \*

15. On or about June 12, 2006, at the regularly scheduled 3:00 p.m. meeting of the Baltimore City Council, Councilwoman Helen L. Holton, acting for the Economic Development and Public Financing Subcommittee, reported favorably to the City Council on Bill 05–0301, the proposed PILOT for Parcel B portion of the Inner Harbor East project.

\* \* \*

22. On or about June 4, 2007, a Baltimore City Council Bill, Legislative ID number 07–0700 (hereinafter "Bill 07–0700") pertaining to the parcel D portion of the Inner Harbor East project was introduced to the Baltimore City Council and assigned to the Taxation and Finance Committee chaired by Councilwoman Helen L. Holton.

\* \* \*

28. On or about July 19, 2007, the Taxation and Finance Committee of the Baltimore City Council held a public hearing on Bill 07–0700. Of the five members of the Committee, Chairperson Helen L. Holton and two other committee members voted to report favorably on the Bill, with amendments. One member as absent and the fifth member abstained.

\* \* \*

34. On or about August 13, 2007, Helen L. Holton reported Bill 07–0700 favorable with amendments to the City Council.

\* \* \*

36. On or about September 24, 2007, the City Council approved Bill 07–0700, authorizing tax relief benefits in the form of a Payment in Lieu of Taxes (PILOT) for Parcel D of Inner Harbor East, with Councilwoman Helen L. Holton casting her vote in favor of the Bill.

\* \* \*

38. In her Financial Disclosure Statement, Helen L. Holton was asked whether she had received any significant gifts, directly or indirectly, from any person that does business with the City or is regulated or lobbies before the City during calendar year 2007. Helen L. Holton answered "yes" to the question and attached Schedule 4 which required a description of all gifts. In response to the question on Schedule 4 about the nature of the gifts, Helen L. Holton responded: "events for which all council members were invited." No other gifts were disclosed.

\* \* \*

## COUNT I

## BRIBERY

## (Criminal Law Article, Section 9–201)

39. The allegations contained in paragraphs 1 through 38 are re-alleged and incorporated herein as if set forth in full.

\* \* \*

## COUNT II

## Malfeasance in Office

**(Common Law)**

41. The allegations contained in paragraphs 1 through 38 are re-alleged and incorporated herein as if set forth in full.

\* \* \*

## *COUNT III*

### *(Perjury—Criminal Law Article, § 9–101)*

43. The allegations contained in paragraphs 1 through 38 are re-alleged and incorporated herein as if set forth in full.

\* \* \*

## *COUNT IV*

### *Nonfeasance in Office*

**(Common Law)**

45. The allegations contained in paragraphs 1 through 38 are re-alleged and incorporated herein as if set forth in full.

The Circuit Court's dismissal of the indictment at issue was accompanied by a MEMORANDUM in which it (1) rejected the State's argument that the doctrine of legislative immunity has no application whatsoever to a *criminal* prosecution of a member of the Baltimore City Council, (2) found "that prohibited legislative material was used and relied on in bringing [the charges against Respondent]," and (3) explained why dismissal of the indictment was required:

These legislative acts are realleged in each of the four counts of the indictment. They form the factual predicate for the charge in Count I that the payment by Doracon Contracting Inc. of $12,500.00 for the survey constituted the receipt of a bribe[ ]; in Count II, that the alleged solicita-

tion and acceptance of that same money constituted a gift and malfeasance in office[ ]; in Count III, that the failure to list the receipt of the $12,500.00 gift on Ms. Holton's 2007 Financial Disclosure Form constituted perjury[ ]; and in Count IV, that this failure also constituted nonfeasance in office.

\* \* \*

The State makes no fall-back or alternative argument that its conduct of the prosecution could be shown to have complied with the State and federal law cited above. For example, cases have indicated that the State may, without violating the privilege, rely on some acts "casually or incidentally related to legislative affairs but not part of the legislative process itself." *United States v. Brewster*, 408 U.S. 501, 528, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972). This doctrine provides prosecutors with some leeway to make incidental references to legislative matters without impairing the privilege.

\* \* \*

The Court reads the failure of the State Prosecutor to make such a showing or proffer, despite being provided several opportunities to do so, including at oral argument on the motion on April 23rd, as a functional concession and admission that, on the current record, it cannot show compliance with the requirements to screen the grand jury from prohibited and prejudicial legislative related evidence in [Respondent's case].

The opinion of the Court of Special Appeals included the following analysis:

A fair reading of [CJ] § 5–501 intimates a legislative imperative that local legislators enjoy the same protection as the protection that State legislators have against being forced to defend or explain their legislative conduct. **Section 5–501 provides:**

**Action for defamation against local government official.**

> A civil or criminal action may not be brought against a city or town councilman, county commissioner, county councilman, or similar official by whatever name known, for words spoken at a meeting of the council or board of commissioners or at a meeting of a committee or subcommittee thereof.

* * *

We do not share the parties' view that the statute is limited to defamation actions against local legislators. Such a view improperly elevates the effect of a mere caption and ignores the plain language of the statute itself as well as its legislative history. The statute was initially enacted by 1973 Md. Laws, ch. 287 for the purpose, according to its title, of providing that "certain officials shall not be liable in *any* civil action or *criminal prosecution* for words spoken in debate." (Emphasis added). Intending to cover all local legislators it added, in nearly identical language, to each of the Code articles dealing with municipal and county legislative bodies (Articles 23A, 25, 25A and 25B) that no such local legislator—town councilman, county commissioner, county councilman, code county commissioner or in debate at [a meeting of the applicable legislative body]." **The meaning and effect of that statute could not be clearer. That language was lifted directly from Article III, Section 18 of the Maryland Constitution and must be construed as having the same effect—to provide the same level and scope of protection to the local legislators as is enjoyed by members of the General Assembly.**

A few months after the enactment of that statute, the General Assembly returned for a special summer session in order to begin implementation of the code revision process—the non-substantive re-writing of the 1957 Code in a more topical and coherent manner. One of the volumes produced at that special session was the Courts and Judicial Proceedings Article, which was intended as a generally non-substantive collection and revision of the laws relating to judicial proceedings. *See* 1973 Md. Laws (1st Sp.Sess.) Ch. 2, § 1. In furtherance of that purpose and intent, the

sections added to Articles 23A, 25, 25A and 25B just months earlier were consolidated and re-styled as Section 5–304 of the new Article. The new section read:

A civil or criminal action may not be brought against a city or town councilman, county commissioner, county councilman, or similar official by whatever name known, for words spoken at a meeting of the council or board of commissioners.

That no substantive change was intended by the rewording of the language is evident from the Revisor's Note that immediately followed the section: "This section is new language derived from Art. 23A, § 1A, Art. 25, § 1A, Art. 25A, § 3, and Art. 25 B, § 10A...." –45–In 1976, the statute was expanded to provide protection not only for legislative conduct at meetings of the council or board itself but also subcommittee meetings. *See* 1976 Md. Laws, Ch. 355. In 1977, the section was moved to its present location, Section 5–501, without any substantive change.

Unfortunately, the advisory body tasked with drafting the new Courts and Judicial Proceedings Article added as a caption to the section "Action for defamation against local government official" and that caption has remained with the section. The parties have seized upon that caption as limiting the scope of the statute itself, which we find to be inappropriate and inadmissible. In determining the meaning of a statute, we look to the words of the statute itself, not a caption. *W. Corr. Inst. v. Geiger*, 371 Md. 125, 141[, 807 A.2d 32, 41] (2002).... **Captions and headings are mere catchwords and can never be taken to limit or expand the plain meaning of the statutory language. The Legislature itself has made that clear. Article 1, Section 18 provides:**

**The captions or headlines of the several sections of this Code which are printed in bold type, and the captions or headlines of the several subsections of this Code which are printed in italics or otherwise, are intended as mere catchwords to indicate the contents of the sections and subsections. They are not to be**

deemed or taken as titles of the sections and subsections, or as any part thereof; and, unless expressly so provided, they shall not be so deemed or taken when any of such sections and subsections, including the captions or headlines, are amended or reenacted.

\* \* \*

[W]e conclude that the privilege or immunity enjoyed by local legislators should be extended to criminal proceedings, as a matter of common law and C.J.P. § 5–501. Local legislators constitute the most direct form of representative democracy. They are the closest to the People and they often set the policies that most directly affect the health, safety and quality of life of the people residing in their communities. They must enjoy the same ability to speak and act in their legislative capacities, without fear of retribution, either criminally or civilly, because of what they say or how they vote. They may be called upon to answer for their legislative conduct to the citizens who elected them, which is what democracy is all about, but they may not be compelled to defend their legislative conduct to a prosecutor, to a grand jury or to a court. The record in this case shows that that is precisely what Ms. Holton was asked to do, and the circuit court was correct in not permitting it.

*State v. Holton,* 193 Md.App. at 362–70, 997 A.2d at 852–56. (Emphasis supplied).

### Discussion

■ We agree with the above quoted analysis of the Court of Special Appeals. Whether local legislators enjoyed a common law "speech and debate" immunity from *criminal* prosecutions is presently a moot question because the General Assembly has, by statute, provided that immunity.

■ The following rules of statutory interpretation are applicable to the case at bar:

> Ordinary and popular understanding of the English language dictates interpretation of terminology within legislation.

*Deville v. State,* 383 Md. 217, 223, 858 A.2d 484, 487 (2004).

> In fact, all statutory interpretation begins, and usually ends, with the statutory text itself, *Marriott Employees [Federal Credit Union ] v. MVA,* 346 Md. 437, 444–45, 697 A.2d 455, 458 (1997), for the legislative intent of a statute primarily reveals itself through the statute's very words. *Derry v. State,* 358 Md. 325, 335, 748 A.2d 478, 483 (2000). A court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application.

* * *

> ■ Where the statutory language is free from [any] ambiguity, courts will neither look beyond the words of the statute itself to determine legislative intent nor add to or delete words from the statute.

*Price v. State,* 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003).

> If the words of a statute are clear and unambiguous, our inquiry ordinary ends and we need investigate no further, but simply apply the statute as it reads. [ ] We interpret statutes to give every word effect, avoiding constructions that render any portion of the language superfluous or redundant.

*Gillespie v. State,* 370 Md. 219, 222, 804 A.2d 426, 427 (2002).

■ Having applied those rules to CJ § 5–501, we conclude that the General Assembly meant what it said when it provided that a "criminal action may not be brought against a [member of the Baltimore City Council] for words spoken at a meeting of the council ... or at a meeting of a committee or subcommittee thereof." Because any other interpretation of CJ § 5–501 would violate the well established rule that a statute should be interpreted in a way that does not render nugatory or superfluous any word, clause, sentence, or phrase included therein, the case at bar is not one in which we must

"go hunting the ghost of legislative intent." *Franklin Square Hospital v. Laubach,* 318 Md. 615, 619, 569 A.2d 693, 695 (1990).

 Moreover, the legislative history actually confirms our conclusion that the doctrine of local official legislative immunity is applicable to a criminal prosecution. The "purpose" clauses of the applicable bills make it clear that the General Assembly intended to provide local legislators with immunity from both civil and criminal actions based upon words spoken in their legislative capacities. As the Court of Special Appeals noted, the General Assembly had several opportunities to— but never did—remove the immunity provisions set forth in CJ § 5-501.

 Ordinarily, because there is no limitation on the character of evidence that may be presented to a grand jury, a defendant is not entitled to the dismissal of an indictment founded on evidence that is inadmissible at trial. As this Court stated in *State v. Bailey,* 289 Md. 143, 422 A.2d 1021 (1980):

> In passing upon the validity of a motion to dismiss an indictment, the appellate courts of this State have been steadfast in holding that: (1) the motion is not a proper vehicle for testing the admissibility of testimonial evidence at trial, *Richardson v. State,* 7 Md.App. 334, 255 A.2d 463 (1969); (2) an unlawful arrest is not a ground for quashing an indictment, *Matthews v. State,* 237 Md. 384, 206 A.2d 714 (1965); (3) a defendant is not entitled to dismissal simply because the prosecution acquired incriminating evidence in violation of law, even if tainted evidence was presented to the grand jury, *Everhart v. State,* 274 Md. 459, 337 A.2d 100 (1975); (4) an indictment should be dismissed where it has been returned by grand jurors who had been required to show a belief in God, *State v. Madison,* 240 Md. 265, 213 A.2d 880 (1965).

*Id.* at 149–150, 422 A.2d at 1025. (Footnotes omitted). In *Everhart, supra,* this Court stated:

Although in *State v. Siegel,* 266 Md. 256, 292 A.2d 86 (1972), aff'g *State v. Siegel,* 13 Md.App. 444, 285 A.2d 671 (1971), this Court sustained the dismissal of an indictment because of an invalid order authorizing an electronic surveillance, it seems clear under the decisions of the United States Supreme Court that "a defendant is not entitled to have his indictment dismissed before trial simply because the government 'acquire[d] incriminating evidence in violation of the [law],' even if the 'tainted evidence was presented to the grand jury.'" *Gelbard v. United States,* 408 U.S. 41, 60, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), citing *United States v. Blue,* 384 U.S. 251, 255, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966). *See also Lawn v. United States,* 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

274 Md. at 486–487, 337 A.2d at 116.

■ The case at bar presents a rare exception to the general rule that suppression of inadmissible evidence, rather than dismissal of the indictment, is the appropriate relief. Although CJ § 5–501 does not provide Respondent with complete immunity from prosecution,[1] the protection provided by that statute is not limited to the exclusion of evidence of "words spoken" by the defendant at a meeting or subcommittee meeting of the elected body on which the defendant is or was serving. CJ § 5–501 provides that "[a] ... **criminal action may not be *brought against* [Respondent] for words spoken at a meeting of the Council or ... at a meeting of a committee or subcommittee thereof." The indictment at issue in the case at bar, which is permeated with assertions that Respondent engaged in conduct for which she does have immunity, is a criminal action that has been brought in violation of CJ § 5–501. The remedy for that violation is dismissal of the indictment.

---

1. In *State v. Panagoulis,* 253 Md. 699, 253 A.2d 877 (1969) (*aff'g* 3 Md.App. 330, 239 A.2d 145 (1968)), this Court affirmed the dismissal of bribery indictments on the ground that the defendant's testimony before the grand jury provided him with (transactional) "immunity from prosecution." *Id.* at 707, 253 A.2d at 881.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**

HARRELL and ADKINS, JJ., Dissent.

HARRELL, J., concurring and dissenting, in which ADKINS, J., joins.

The indictment in the present case alleges that Councilwoman Helen L. Holton ("Holton" or "Respondent") accepted the in-kind value of a campaign poll, valued at $12,500, in exchange for her favorable votes benefitting the actual payor's interest in two Baltimore City Council ("the Council") real property development bills. The evidence presented to the grand jury included evidence of Holton's votes related to the bills. The questions presented for our consideration involve whether legislative immunity extends to local legislators, either through interpretation of the Maryland Constitution's version of the Speech and Debate Clause, MD. CONST. Art. III, § 18,[1] or Maryland Code (1974, 2006 Repl. Vol.), Courts and Judicial Proceedings ("C.J.") Article, § 5–501.[2] In my view, the Majority Opinion concludes properly that § 5–501 applies to disallow the use in criminal prosecutions of evidence of legislative acts against local legislators. After laying out in some detail why dismissal of an indictment is not a favored remedy, however, the Majority Opinion concludes (unjustifiably) that "[t]he case at bar presents a rare exception to the general rule that suppression of inadmissible evidence, rather than dismissal of the indictment, is the appropriate relief." 420 Md. 530, 24 A.3d 678 (2011) (Majority op. at 543, 24 A.3d at 685). As the Majority Opinion points out, this Court long

---

1. MD. CONST. Art. III, § 18 provides, in pertinent part, "[n]o Senator or Delegate shall be liable in any civil action, or criminal prosecution, whatever, for words spoken in debate."

2. Maryland Code (1974, 2006 Repl.Vol.), Courts and Judicial Proceedings Article, § 5–501 provides: "A civil or criminal action may not be brought against a city or town councilman, county commissioner, county councilman, or similar official by whatever name known, for words spoken at a meeting of the council or board of commissioners or at a meeting of a committee or subcommittee thereof."

has recognized that dismissal of an indictment is disfavored. Dismissal of an indictment is appropriate only in the most extreme of circumstances, as the potential for harm outweighs greatly the benefits. Because, in my view, this case is not such an extreme circumstance, I dissent.

## I.

The U.S. Supreme Court long has held that the bar for handing down a valid indictment under the Fifth Amendment is not set very high. *See Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397, 402–03 (1956) ("An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.") (footnote omitted). The facial validity *vel non* of an indictment hinges only on the composition of the grand jury, and if that is found valid, courts will not inquire generally beyond the four corners of the indictment. *See United States v. Mills*, 995 F.2d 480, 487 (4th Cir.1993) ("The longstanding rule of law that courts may not 'look behind' grand jury indictments if 'returned by a legally constituted and unbiased grand jury[ ]' is the touchstone for any inquiry into the legality of indictments.") (quoting *Costello*, 350 U.S. at 363, 76 S.Ct. at 409, 100 L.Ed. at 402–403). Accordingly, the validity of an indictment does not hinge upon whether the facts advanced there are sufficient. *See State v. Taylor*, 371 Md. 617, 645, 810 A.2d 964, 980 (2002) ("A motion to dismiss the charges in an indictment . . . is not directed to the sufficiency of the evidence, *i.e.*, the quality or quantity of the evidence that the State may produce at trial, but instead tests the legal sufficiency of the indictment on its face."); *id.* ("A pretrial motion to dismiss an indictment . . . may not be predicated on insufficiency of the State's evidence because such an analysis necessarily requires consideration of the general issue."); *State v. Bailey*, 289 Md. 143, 150, 422 A.2d 1021, 1025 (1980) ("[T]he motion to dismiss attacks the sufficiency of the indictment, not the sufficiency of the evidence.").

For instance, in *Holt v. United States*, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910), testimony held ultimately to be inadmissible was offered by the Government to the grand jury. Despite the fact that "there was very little evidence against the accused," other than the inadmissible testimony, the Supreme Court held that dismissal of the indictment was not the proper disposition. *Holt*, 218 U.S. at 247, 31 S.Ct. at 4, 54 L.Ed. at 1028. The Court "refused to hold that such an indictment should be quashed, pointing out that '[t]he abuses of criminal practice would be enhanced if indictments could be upset on such a ground.'" *Costello*, 350 U.S. at 363, 76 S.Ct. at 408, 100 L.Ed. at 402 (quoting *Holt*, 218 U.S. at 248, 31 S.Ct. at 4, 54 L.Ed. at 1028). The proposition that an indictment, otherwise valid on its face, is dismissed rarely on an evidentiary technicality is, therefore, long-settled. *See, e.g., United States v. Blue*, 384 U.S. 251, 255, 86 S.Ct. 1416, 1419, 16 L.Ed.2d 510, 514 (1966) (holding that evidence presented to the grand jury and obtained in violation of defendant's Self–Incrimination right is cause for suppression of the evidence, but not dismissal of the indictment); *Lawn v. United States*, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958) (holding that it was improper to inquire into the legality of evidence presented to a grand jury that returned an indictment valid on its face); *Gelbard v. United States*, 408 U.S. 41, 60, 92 S.Ct. 2357, 2367, 33 L.Ed.2d 179, 194 (1972) ("The 'general rule,' as illustrated in *Blue*, is that a defendant is not entitled to have his indictment dismissed before trial simply because the Government 'acquire[d] incriminating evidence in violation of the [law],' even if the 'tainted evidence was presented to the grand jury.'"); *Hopkins v. State*, 19 Md.App. 414, 426, 311 A.2d 483, 490 (1973) ("That an indictment is founded on tainted evidence is no ground for dismissal. . . .").

Maryland, until the present case, followed the lead of Supreme Court jurisprudence regarding the dismissal of indictments. As the Majority Opinion recognizes, quoting *Everhart v. State*, 274 Md. 459, 486–87, 337 A.2d 100, 116 (1975):

Although in *State v. Siegel*, 266 Md. 256, 292 A.2d 86 (1972), *aff'g State v. Siegel*, 13 Md.App. 444, 285 A.2d 671 (1971),

this Court sustained the dismissal of an indictment because of an invalid order authorizing an electronic surveillance, it seems clear under the decisions of the United States Supreme Court that "a defendant is not entitled to have his indictment dismissed before trial simply because the government 'acquire(d) incriminating evidence in violation of the [law],' even if the 'tainted evidence was presented to the grand jury.'"

420 Md. 530, 24 A.3d 678 (2011) (Majority op. at 543, 24 A.3d at 685). This alignment with the views of the Supreme Court is recognized as far back as *Pick v. State*, 143 Md. 192, 121 A. 918 (1923). In *Pick*, Bessie Pick was charged with "larceny of certain sums of money and with receiving stolen goods." *Id.* Pick argued that, having been subpoenaed to testify in front of the grand jury, she testified against herself and her co-defendant without being informed that her testimony would be used against her. *Pick*, 143 Md. at 194, 121 A. at 919. The indictment, she argued, "was directly found upon said testimony so given . . . under compulsory process and under the other circumstances and conditions aforesaid, and that said indictment and the proceedings upon which it was found were in violation of the Declaration of Rights and the Constitution and Laws of the State of Maryland." *Pick*, 143 Md. at 195, 121 A. at 919. This Court, citing *Holt* with approval, held that incompetent testimony of the type presented there before a grand jury was not enough to quash the indictment. *See Pick*, 143 Md. at 196, 121 A. at 919 ("The law is well settled, that the competency of testimony before the grand jury will not be inquired into by the courts.").

More recently, in *Everhart*, 274 Md. at 486, 337 A.2d at 116, although there was no motion to dismiss the indictment filed in the trial court, this Court "included, within the scope of our writ of certiorari, [a] question . . . whether the petitioner was indicted and arrested on the basis of a search and seizure warrant without probable cause." Everhart filed a motion to suppress the property seized during a search which he claimed was beyond the boundaries of the warrant. *Everhart*, 274 Md. at 463, 337 A.2d at 103. This Court, addressing whether a

motion to dismiss the indictment would have been a proper motion and remedy, explained that, "even the submission unto the grand jury of evidence obtained in violation of [the petitioner's] constitutional rights would not impair the validity of his indictment...." *Everhart,* 274 Md. at 487–88, 337 A.2d at 116. The Court concluded that, "[a]s we see it, the only proper manner in which to present the issue raised by the petitioner was—as he did—through a motion to suppress...." *Everhart,* 274 Md. at 488, 337 A.2d at 116.

The general rule in Maryland, therefore, is that dismissal of an indictment is improper where the indictment is supported by inadmissible evidence. *See Bailey,* 289 Md. at 149, 422 A.2d at 1025 (noting that a motion to dismiss an indictment "is not a proper vehicle for testing the admissibility of ... evidence at trial"); *see also Bartram v. State,* 280 Md. 616, 374 A.2d 1144 (1977) (discussing the lengthy history of disfavoring dismissal of indictments on evidentiary grounds under Maryland Law).

The disfavoring of dismissals of indictments is supported by sound policy. In *Costello,* 350 U.S. at 363, 76 S.Ct. at 408–09, 100 L.Ed. at 402, the Supreme Court, although asked to formulate a rule instructing federal courts that an indictment based solely upon hearsay is invalid, explained that "[t]he result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury." The ability to challenge the sufficiency of the evidence presented to the grand jury would create effectively the possibility of mini-trials to test the strength of the State's evidence. In my view, there is no convincing reason why § 5–501 should allow such a preliminary evidentiary disposition as the Majority dispenses here.

The potentiality of these "preliminary trials" would impair judicial efficiency. *See Costello,* 350 U.S. at 363, 76 S.Ct. at 408, 100 L.Ed. at 402 ("If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay

would be great indeed."). Defendants could protract the trial process by first challenging the sufficiency of the evidence presented to the grand jury and/or evidentiary references in the indictment, and if unsuccessful, follow that with a traditional motion to suppress evidence or perhaps a later motion in limine to exclude evidence. In effect, sanctioning the dismissal of the indictment here may disrupt the orderly administration of justice by encouraging proliferation of yet another form of pre-trial motion.

In addition, the purpose behind the use of a grand jury would be eroded if a party were allowed to challenge indictments more freely based on the sufficiency of the evidence. The grand jury serves the " 'dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions.' " *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 423, 103 S.Ct. 3133, 3137, 77 L.Ed.2d 743, 752 (1983) (quoting *Branzburg v. Hayes*, 408 U.S. 665, 686–687, 92 S.Ct. 2646, 2659, 33 L.Ed.2d 626, 644 (1972)) (footnote omitted). In order to perform these important functions, the grand jury, therefore, is not constricted by the formal rules of evidence. *See United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561, 568–69 (1974) ("The grand jury['s] . . . operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials."). If the grand jury is limited in its ability to investigate, free from the limitations of evidentiary rules (like C.J. § 5–501), its operation and function would be diminished without, in my view, a sufficient counter-balancing benefit or detriment on the other side of the ledger. *See Sells Eng'g, Inc.*, 463 U.S. at 424, 103 S.Ct. at 3138, 77 L.Ed.2d at 752 ("These broad powers are necessary to permit the grand jury to carry out both parts of its dual function. Without thorough and effective investigation, the grand jury would be unable either to ferret out crimes deserving of prosecution, or to screen out charges not warranting prosecution."). It is for this reason that the Supreme Court held that establishing a rule that permits defendants to challenge indictments on

grounds that the indictments are not supported by adequate or competent evidence,

> would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules. Neither justice nor the concept of a fair trial requires such a change. In a trial on the merits, defendants are entitled to a strict observance of all the rules designed to bring about a fair verdict. Defendants are not entitled, however, to a rule which would result in interminable delay but add nothing to the assurance of a fair trial.

*Costello,* 350 U.S. at 364, 76 S.Ct. at 409, 100 L.Ed. at 403. Allowing dismissal of the indictment on the ground that it contains on its face recitation of, or reference to, privileged legislative activities opens the door to the diminished significance of grand jury proceedings.

In a backhanded way, the Majority Opinion makes the case that dismissal of the indictment in the present case is not the proper disposition. It states: "Ordinarily, because there is no limitation on the character of evidence that may be presented to a grand jury, a defendant is not entitled to the dismissal of an indictment founded on evidence that is inadmissible at trial." 420 Md. 530, 24 A.3d 678 (2011) (Majority op. at 542, 24 A.3d at 685). The Majority then states abruptly, "[a]lthough CJ § 5–501 does not provide Respondent with complete immunity from prosecution, the protection provided by that statute is not limited to the exclusion of evidence of 'words spoken' by the defendant at meeting or subcommittee meeting of the elected body on which the defendant is or was serving." 420 Md. 530, 24 A.3d 678 (2011) (Majority op. at 543, 24 A.3d at 685) (footnote omitted).

As support for this assertion, the Majority cites *State v. Panagoulis,* 253 Md. 699, 253 A.2d 877 (1969), which addressed whether a defendant was immune from prosecution because his compelled testimony was offered to the grand jury.[3] Panagoulis, then chief of police for Prince George's

---

3. The statutes at issue in *Panagoulis,* Maryland Code (1957, 1967 Repl.Vol.), Art. 27 §§ 23 and 39, are now consolidated and renumbered

County, "moved to dismiss the indictments on the ground that, having testified before the grand jury ... without formally waiving his privilege against self-incrimination, he had acquired an immunity from prosecution under Maryland Code (1957, 1967 Repl.Vol.), Art. 27, §§ 23 and 39." *Panagoulis,* 253 Md. at 701, 253 A.2d at 878. The issue, then, was whether Panagoulis's later testimony, given the nature of his earlier statements to the grand jury, was voluntary, therefore waiving his explicit, statutorily-granted immunity from prosecution. *Panagoulis,* 253 Md. at 707, 253 A.2d at 882. The Court held that he was compelled, and therefore "[u]nder the facts of this case we cannot say that Panagoulis' conduct mounted up to a waiver of the immunity conferred by statute." *Panagoulis,* 253 Md. at 710, 253 A.2d at 883.

The present case is distinguished easily from *Panagoulis.* Holton is not claiming that she is immune from prosecution on the bribery charges; [4] the issue, rather, is the recitation of, or reference to, legislative acts in the indictment. The Majority's reliance upon *Panagoulis* conflates an evidentiary privilege and immunity from prosecution.[5] Even this conflation, howev-

---

as Md.Code (2002), Criminal Law Art., § 9–204. It provides, in pertinent part, "[a] person compelled to testify for the State under this section is immune from prosecution for a crime about which the person was compelled to testify."

4. Respondent argues aptly, and I agree that, "[i]n addressing immunity that is extended to local legislators, Petitioner often equates legislative immunity with immunity from prosecution. Respondent has never argued that she is immune from prosecution. The issue is, and has always been, whether the State may use evidence of her legislative acts in prosecuting her for an alleged offense."

5. The Majority opinion highlights that part of C.J. § 5–501 which states that a "**criminal action may not be *brought against*** [Holton] for words spoken at a meeting of the Council," reasoning that "[t]he indictment at issue in the case at bar ... is a criminal action that has been brought in violation of CJ § 5–501," and, therefore, "the remedy for that violation is dismissal of the indictment." 420 Md. 530, 24 A.3d 678 (2011) (Majority op. at 543, 24 A.3d at 685). The present case, however, was not "brought against" Holton for "words spoken at a meeting of the Council," rather, the case was "brought against" Holton for bribery, malfeasance in office, perjury, and nonfeasance in office—charges

er, does not explain substantively why the Majority concludes that this case is a "rare exception" to the general rule. It, therefore, runs the very real risk of opening an ill-defined loophole allowing for the dismissal of indictments on evidentiary grounds. Without making the case for the exceptionality of the circumstances, the Majority Opinion opens the doors to the potentiality of motions to dismiss based upon issues that are handled ably later in the course of proceedings by motions to suppress or motions in limine. *See Bailey,* 289 Md. at 149, 422 A.2d at 1025 ("[A] defendant is not entitled to dismissal [of the indictment] simply because the prosecution acquired incriminating evidence in violation of the law, even if tainted evidence was presented to the grand jury. . . ."); *Hayward v. State,* 278 Md. 654, 658, 366 A.2d 52, 55 (1976) ("[T]he proper sanction to be invoked where evidence has been seized in violation of [constitutional] rights is the application of the exclusionary rule, not the dismissal of the indictment."). Rather than dismiss the indictment, the proper remedy is ruling later on the admissibility of the legislative activities evidence. The Supreme Court held:

> While the general common-law practice is to admit evidence despite its illegal origins, this Court in a number of areas has recognized or developed exclusionary rules where evidence has been gained in violation of the accused's rights under the Constitution, federal statutes, or federal rules of procedure. *Weeks v. United States,* 232 U.S. 383[, 34 S.Ct. 341, 58 L.Ed. 652 (1914)]; *Rogers v. Richmond,* 365 U.S. 534[, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961)]; *Mapp v. Ohio,* 367 U.S. 643[, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)]; *Nardone v. United States,* 308 U.S. 338[, 60 S.Ct. 266, 84

---

supported by *evidence* of her "words spoken at a meeting of the Council." This is not a distinction without a difference.

The bribery counts aside, Counts III and IV of the indictment relate to Holton's failure to list a gift from a contractor on a financial disclosure form, and, therefore, were unrelated to any "words spoken at a meeting of the Council," within the contemplation of CJ § 5–501. Accordingly, even if one subscribes to the Majority's analysis vis á vis CJ § 5–501, Counts III and IV of the indictment do not implicate CJ § 5–501 and, thus, should not have been dismissed.

L.Ed. 307 (1939) ]; *Mallory v. United States*, 354 U.S. 449[, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957) ]. Our numerous precedents ordering the exclusion of such illegally obtained evidence assume implicitly that the remedy does not extend to barring the prosecution altogether.

*Blue*, 384 U.S. at 255, 86 S.Ct. at 1419, 16 L.Ed.2d at 514–15. In my view, the present case is no exception. Respondent challenges that the "infection" of the indictment by the tainted evidence is so extensive that excision of the barred evidence is not possible.[6] If the prosecution cannot prove its case without the use of the legislative materials, then the fact that this particular case may be so hobbled by a lack of other non-legislative evidence is not grounds to declare arbitrarily the case a "special exception," establish precedent for evidentiary mini-trials, facilitate potential delay in the administration of justice, erode the purpose of the grand jury, and invite exploitation of an ill-defined loophole.

In *Bailey*, 289 Md. at 150, 422 A.2d at 1025, this Court stated:

[A] motion to dismiss the indictment will properly lie where there is some substantial defect on the face of the indictment, or in the indictment procedure, or where there is some specific statutory requirement pertaining to the indict-

---

**6.** To support this argument, Respondent relies on *United States v. Helstoski*, 635 F.2d 200 (3d Cir.1980). Cases deeming dismissal to be the appropriate remedy are all federal appellate courts applying the federal Speech or Debate Clause. *See, e.g. United States v. Rostenkowski*, 59 F.3d 1291 (D.C.Cir.1995) *opinion supplemented on denial of reh'g*, 68 F.3d 489 (D.C.Cir.1995); *United States v. Swindall*, 971 F.2d 1531 (11th Cir.1992); *Helstoski*, 635 F.2d at 200; *United States v. Jefferson*, 534 F.Supp.2d 645 (E.D.Va.2008) *aff'd*, 546 F.3d 300 (4th Cir.2008). The present case is not decided under the federal Speech or Debate Clause, nor even the Maryland Constitution's version of the Speech or Debate Clause. This case is determined by C.J. § 5–501, which is a limitation on the use of "words spoken at a meeting of the council or board of commissioners or at a meeting of a committee or subcommittee thereof." It is not decided upon *constitutional* immunity to legislators, but rather on *statutory* limitations on the use of evidence. In that regard, it is a State law governing State criminal procedure, just as any other evidentiary privilege granted by statute. It should be treated as such.

ment procedure which has not been followed. In the absence of statutory authority to the contrary, where the object of appellate review of a dismissal is to test a pre-trial ruling of the court dealing with the admissibility of evidence, appellate review of such pretrial ruling should be denied.

Because I would hold that there is no "substantial defect on the face of the indictment, or in the indictment procedure," finding that there is no "specific statutory requirement pertaining to the indictment procedure which has not been followed," I would conclude that the dismissal of the State's indictment against Holton is not the proper disposition of the present case. Accordingly, I dissent as to the remedy sanctioned by the Majority Opinion.

Judge ADKINS authorizes me to state that she joins in the views expressed in this concurring and dissenting opinion.