36 A.3d 977

**Latresha L. WEEMS**

v.

**STATE of Maryland.**

**No. 2782, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Feb. 2, 2012.

48

Brian L. Zavin (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for appellant.

Robert Taylor, Jr., (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellee.

Panel: KRAUSER, C.J., GRAEFF, JAMES A., KENNEY, III (Retired, Specially Assigned), JJ.

KENNEY, J.

Convicted by the Circuit Court for Anne Arundel County of theft, appellant, Latresha L. Weems, presents one question for our review: Was the evidence sufficient to sustain her conviction? For the reasons below, we answer that question "no," and reverse the judgment of the circuit court.

## BACKGROUND

Anchor Check Cashing ("Anchor") is a "licensed check casher" located in Annapolis. On February 17, 2009, Weems, an Anchor customer since April 2008, entered Anchor's premises and approached Maria Powe, a customer service representative. Weems presented a check drawn on SunTrust Bank ("SunTrust") and made out to Weems in the amount of $3,250.00, and asked Powe to cash the check. Powe replied that she was unable to cash the check, but she would submit Weems's request to Anchor owner Marie Coulter. Powe made a copy of the check and Weems's driver's license, and Weems departed.

Later that day, Weems returned to Anchor and spoke with Coulter. After contacting SunTrust, Coulter cashed the check and gave Weems $3,250.00. On February 24, 2009, Coulter was informed by Branch Banking and Trust ("BB & T") that the check was counterfeit. Weems was subsequently charged with uttering a forged document, theft, and possessing a counterfeit document.

At trial, when called by the State, Coulter testified as follows:

[PROSECUTOR:] Ms. Coulter, after you got this notice [from BB & T]—

[COULTER:] Yes.

[PROSECUTOR:]—did you have any further contact with Ms. Weems?

[COULTER:] Yes, I did. I called her and I told her that it was a counterfeit check, that it was a crime and that it would be to her best benefit to get as much money back to me as she could because that would look good on her part when it went to court. And she told—

[PROSECUTOR:] Got to do one question at a time ma'am, I'm sorry.

[COULTER:] I'm sorry. I'm sorry.

[PROSECUTOR:] Did Ms. Weems ever make any payments back to you?

[COULTER:] No.

[PROSECUTOR:] Has Ms. Weems had any contact with you since you made those attempts to get her to repay?

[COULTER:] No.

\*  \*  \*

[PROSECUTOR:] And Ms. Weems, did she ever come back to the store and make any payment?

[COULTER:] No. I could tell you the conversation, part of it as to why she didn't.

[PROSECUTOR:] I think that's what my grandmother refers to as where angels fear tread.

[COULTER:] You're talking soft again.

[PROSECUTOR:] I think I'll not ask that question, but thank you.

[COULTER:] Okay.

Following the close of the evidence, the court stated:

> ... I find beyond a reasonable doubt that the State has proven ... theft. I cannot find beyond a reasonable doubt that the State has proven [the other offenses]. The reason that I say that is I'm not convinced beyond a reasonable doubt that she necessarily knew that it was a counterfeit check at the time that she tendered it.

*     *     *

> [W]hen I study this chapter on theft it does appear that [Md.Code (2002, 2008 Supp.), § 7–104(d) of the Criminal Law Article ("CL"),] [1] would control because I believe that the part would be mistake as to the nature of the property, would apply. Based on the evidence by the owner of the company that once she told her that she could not be paid on the check and that it was a bad check and this is a crime and that sort of thing, that would clearly put [Weems] on notice that she was not entitled to the money. At least on some theory.

> And presumably she was in possession of those funds. I mean, the State—[Weems] did not put on evidence that unfortunately she had already spent all of the money and could not return it or there were other reasons why she couldn't take any action. But it appears from the evidence presented which all came from the State that she remained in possession of money that she shouldn't have been after

---

1. CL § 7–104(d) states:

   A person may not obtain control over property knowing that the property was lost, mislaid, or was delivered under a mistake as to the ... nature ... of the property, if the person:

     (1) knows or learns the identity of the owner ...;

     (2) fails to take reasonable measures to restore the property to the owner; and

     (3) intends to deprive the owner permanently of the use or benefit of the property when the person obtains the property or at a later time.

she was told of the nature of the property and that was that it was a counterfeit check. So based on that I do find beyond a reasonable doubt that she committed a theft.

## DISCUSSION

Weems contends that the evidence was insufficient to sustain her conviction. The standard for appellate review of evidentiary sufficiency in a criminal case was explicated by the Court of Appeals in *State v. Smith*, 374 Md. 527, 533–34, 823 A.2d 664 (2003), as:

> [W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Weighing the credibility of witnesses and resolving any conflicts in the evidence are tasks proper for the fact finder. We give due regard to the fact finder's findings of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses. We do not re-weigh the evidence, but we do determine whether the verdict was supported by sufficient evidence, direct or circumstantial, which could convince a rational trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt.

(Internal citations, quotations, and brackets omitted).

Whether the State met its evidentiary burden in this case is essentially a question of statutory interpretation, the rules for which were summarized by the Court of Appeals in *Gardner v. State*, 420 Md. 1, 8–9, 20 A.3d 801 (2011):

> The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature. . . .
>
> To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to the legislative intent ends ordinarily and we apply the

statute as written without resort to other rules of construction. . . .

. . . Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process.

(Internal citations omitted). When interpreting a criminal statute, the rule of lenity "may or may not play a part in determining the legislative intent." *Moore v. State*, 198 Md. App. 655, 680, 18 A.3d 981 (2011). "If . . . the legislative intent cannot be determined . . . the rule of lenity dictates that the matter be resolved in favor of the accused. . . ." *Cunningham v. State*, 318 Md. 182, 185–86, 567 A.2d 126 (1989). In other words, "the rule of lenity does not shed light on legislative intent. Rather, lenity provides a mechanism for resolving ambiguity when legislative intent cannot be determined to any degree of certainty." *Gardner*, 420 Md. at 17, 20 A.3d 801.

Focusing on the opening words of Section 7–104(d) of the Criminal Law Article that "a person may not *obtain* control over property *knowing* that the property was . . . delivered under a mistake as to the . . . nature . . . of the property," Weems argues that the "plain language" of § 7–104(d) required the State to "prove that [she] knew that the check was counterfeit at the time she presented it to Anchor." (Emphasis added). The State looks to § 7–104(d), more specifically the words "or learns" in paragraph (1) and "at a later time" in paragraph (3), and argues that the statute should be interpreted to mean that a theft arises when a person who has obtained control over property, without knowing that the property was "delivered under a mistake as to the . . . nature . . . of the property," later learns of the mistake and the identity of the owner and then decides to "deprive the owner permanently of the use or benefit of the property." (Emphasis added).

At common law, the intent to deprive the owner of the use or benefit of the property had to exist when the accused obtained the property. The General Assembly clearly and expressly changed that aspect of the common law with the current theft statute. § 7–104(d)(3). Now, the intent to deprive the owner of the property may be formed either "when the person obtains the property or at a later time." The State takes the position that in adopting the Model Penal Code approach, the General Assembly intended to punish the continued control over property with the intent "to deprive the owner permanently of the use or benefit of the property" having later learned of the mistake and the identity of the owner. If that were the intent, the statutory language is not without ambiguity. Looking at paragraph (3) of § 7–104(d), the statute reads in part "when the person obtains the property or at a later time." Although the words "obtains the property" are somewhat different from "obtain control over property," both appear to refer to when the person first comes in contact with the property at issue as is made clear by the phrase "or at a later time" in paragraph (3).

We look to the legislative history to shed further light on the legislative intent. "In 1978, the General Assembly, following the lead of the Model Penal Code, enacted a new, consolidated theft statute that encompassed the seven pre-existing larceny offenses."[2] *Kelley v. State*, 402 Md. 745, 751–52, 939 A.2d 149 (2008). The General Assembly's Joint Subcommittee on Theft Related Offenses commented on Md.Code (1957, 1976 Repl.Vol., 1978 Supp.), Art. 27 § 342(d), the predecessor of CL § 7–104(d):[3]

---

**2.** The seven pre-existing larceny offenses consolidated into § 7–104 are larceny, larceny by trick, larceny after trust, embezzlement, false pretenses, shoplifting, and receiving stolen property. CL § 7–102(a)(1)–(7). Following the consolidation, § 7–104(d) prohibits theft of property that has been "lost, mislaid, or delivered under a mistake." CL § 7–104(d).

**3.** Prior to 2002, Maryland's general theft statute was codified as Md. Code (1957), Art. 27 § 342. In 2002, the legislature recodified the statute as CL § 7–104. *See* 2002 Md. Laws, Chap. 26, § 2.

This subsection pertains to instances when a person, acting in a certain manner, obtains control over property of another ... which has been (1) lost, (2) mislaid, or (3) delivered by mistake. The manner in which the person must act is outlined by paragraphs (1), (2), and (3) of this subsection. The circumstances outlined in these paragraphs are expressed conjunctively, and therefore all three of these elements must exist in order for there to be a conviction of theft ... under this subsection.

It was a crime at common law to deprive the owner of lost property of possession of that property if the finder of the lost property formulated the intent to deprive at the time he found the property. It was reasoned that in order for there to be a larceny at common law, there must be a trespatory taking. The trespass could only occur if the intent to deprive was formulated at the time the property was found. A person who came into possession of lost property without having an intent to deprive the rightful owner of possession was regarded not to have committed a trespass, since he lacked the mens rea necessary to be guilty of larceny and was therefore in lawful possession of the lost property.

This requirement that the intent to deprive be formulated when the lost property is discovered has been viewed as a fiction of the common law. The purpose of this requirement was to induce the finder to take appropriate measures to discover the identity of the rightful owner. By taking these measures, the finder provided proof of his innocence through evidence of a lack of mens rea necessary to constitute larceny. ...

In order to avoid this fiction of the common law which requires a nebulous determination of whether there was an intent to deprive at the time the property was found, it was decided that an intent which is formulated at any time with a purpose of depriving the rightful owner of lost, mislaid, or misdelivered property is sufficient to constitute the crime of theft.

Maryland General Assembly Joint Subcommittee on Theft Related Offenses, *Revision of Maryland Theft Laws and Bad*

*Check Laws* (Oct.1978) at 41–42 (quotations and emphasis omitted).

Section 223.5 of the Model Penal Code, entitled "Theft of Property Lost, Mislaid, or Delivered by Mistake," provides:

> A person who comes into control of property of another that he knows to have been lost, mislaid, or delivered under a mistake as to the nature or amount of the property or the identity of the recipient is guilty of theft if, with purpose to deprive the owner thereof, he fails to take reasonable measures to restore the property to a person entitled to it.

The commentary on Section 223.5 states:

> The search for an initial fraudulent intent appears to be largely fictional, and in any event poses the wrong question. *The realistic objective in this area is not to prevent initial appropriation but to compel subsequent acts to restore to the owner. The section therefore permits conviction even where the original taking was honest* .... Section 223.5 thus focuses on the operative event of a purpose to deprive accompanied by the failure to take reasonable measures to restore.

Model Penal Code and Commentaries, Part II, Vol. 2 at 224 (1980) (emphasis added). As one commentator has noted, the modern criminal code trend, as illustrated in the Model Penal Code, is to abandon a morally ambiguous distinction between an initial and subsequent intent to steal. Wayne R. LaFave, *Criminal Law* § 19.2(g) (4th ed.2003). Accordingly, the Model Penal Code theft provision

> makes the transferee of property delivered by mistake (like the finder of property) guilty of theft if, with the purpose of depriving the owner thereof, he fails to take reasonable steps to restore the property to the person entitled to it. *Thus nothing depends upon when he discovers the mistake or when he decides to misappropriate the property. If he does not learn of the mistake until after he takes delivery, or (if he learns on delivery) if he postpones his decision to steal, he is nonetheless guilty when he fails to take reasonable steps to restore the property.* On the other hand, if he

realizes the mistake and decides to steal at the moment he takes delivery, he is not guilty if he thereafter has a change of heart and takes reasonable steps.

*Id.* at § 19.2(g), n. 56 (emphasis added).

The Joint Subcommittee Report reflects the General Assembly's clear intent to avoid the "fiction of the common law which requires a nebulous determination of whether there was an intent to deprive at the time the property was found." But, even if we were persuaded that the General Assembly sought to import all of the Model Penal Code's substantive provisions, § 7–104(d) plainly provides that "[a] person may not obtain control over property *knowing* that the property was lost, mislaid, or was delivered under a mistake."

█ Section 7–101(f) of the Criminal Law Article defines "obtain" as an act that "bring[s] about a transfer of interest in or possession of the property." § 7–102(b)(1)(i) defines "knowing conduct," providing that "[a] person acts 'knowingly' with respect to conduct or a circumstance as described by a statute that defines a crime, when the person is aware of the conduct or that the circumstance exists[.]" § 7–102(b)(2) states that "[t]he terms 'knowing' and 'with knowledge' are construed in the same manner." "The best source of legislative intent is the statute's plain language," *Stubbs v. State,* 406 Md. 34, 43, 956 A.2d 155 (2008) (quoting *Smith v. State,* 399 Md. 565, 578–79, 924 A.2d 1175 (2007)), and, here, the plain language of § 7–104(d) suggests that "knowing that the property . . . was delivered under a mistake" relates to when a person first obtains control of the property. The trial court did not find that Weems was aware that the property was lost, mislaid, or delivered under a mistake when she came into possession of the money.

█ To read the statute as the State would have us read it, § 7–104(d) would more clearly state "may not obtain or retain control over property," or words to that effect. But, we "may neither add nor delete [statutory] language[.]" *State v. Holton,* 420 Md. 530, 541, 24 A.3d 678 (2011). Had the General Assembly desired to do so, it could have drafted subsection (d) of § 7–104 to more clearly prohibit post-acquisition conduct as

it did in paragraph (3) with post-acquisition intent. Other jurisdictions have drafted their respective theft statutes to impose criminal liability on a person who retains property after learning that the property was "lost, mislaid, or delivered under a mistake." *See* Official Code Georgia Ann., §§ 16–8–6, 16–8–7 (2011)[4]; Ark.Code Ann. § 5–36–105(a)(2) (2011).[5]

■ Under § 7–104(d), it appears that knowledge of the mistake must coincide with when the accused first "obtain[s] control" over the property, and if there was a different legislative intent, it cannot be determined to any degree of certainty. Under these circumstances, the rule of lenity dictates that we resolve this matter in favor of Weems.

■ Weems also argues that the State failed to "prove, beyond a reasonable doubt, that [she] did not take reasonable

---

4. O.C.G.A. § 16–8–6. Theft of lost or mislaid property:
   A person commits the offense of theft of lost or mislaid property when he comes into control of property that he knows *or learns to have been lost or mislaid* and appropriates the property to his own use without first taking reasonable measures to restore the property to the owner.
   O.C.G.A. § 16–8–7. Theft by receiving stolen property:
   (a) A person commits the offense of theft by receiving stolen property when he receives, disposes of, *or retains* stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner. "Receiving" means acquiring possession or control or lending on the security of the property.
   (Emphasis added).

5. Ark.Code Ann. § 5–36–105. Theft of property lost, mislaid, or delivered by mistake.
   (a) A person commits theft of property lost, mislaid, or delivered by mistake if the person:
   (1) Comes into control of property of another person;
   (2) *Retains or disposes of the property when the person knows the property to have been lost, mislaid, or delivered under a mistake* as to the identity of the recipient or as to the nature or amount of the property; and
   (3) With the purpose of depriving any person having an interest in the property, the person fails to take a reasonable measure to restore the property to a person entitled to it.
   (Emphasis added).

measures to restore the money to Anchor." An element of a crime is distinct from an affirmative defense to a crime. The State has the burden of proving the elements of a crime "beyond a reasonable doubt." *Savoy v. State,* 420 Md. 232, 246 (2011). "An affirmative defense 'in pleading [is a] matter asserted by [a] defendant, which assuming the complaint to be true, constitutes a defense to [the crime]. . . .' " *Hof v. State,* 337 Md. 581, 614, n. 36, 655 A.2d 370 (1995) (quoting Blacks Law Dictionary 60 (6th ed.1990)). "A classic affirmative defense is something the defendant must prove, not something the State must disprove. . . . [T]here is allocated to the defendant both 1) the burden of initial production and 2) the burden of ultimate persuasion." *Herd v. State,* 125 Md.App. 77, 94, 724 A.2d 693 (1999). But, if the "defense does . . . in actuality negate any element of the crime," such as an alibi, then the State retains the burden of proving the lack of the defense beyond a reasonable doubt. LaFave, *supra, Criminal Law* § 1.8(c).

▆ We are persuaded that the State had the burden to prove that the accused failed "to take reasonable measures to restore the property to the owner[.]" Because Maryland followed the lead of the Model Penal Code in drafting § 7–104, we find instructive the commentary accompanying Section 223.5, which states:

2. *Culpability.* The prosecution must prove under this section that the defendant knew the property was lost, mislaid, or delivered under a mistake. . . . In addition to the requirement of knowledge under the Model Code, the actor must have a purpose to deprive the owner of the property and must know that he has failed to take reasonable measures to restore the property to a person entitled to it.

Model Penal Code Model Penal Code and Commentaries, *supra,* at page 227. (Emphasis in original).

In *Binnie v. State,* 321 Md. 572, 579, 582, 583 A.2d 1037 (1991), the Court of Appeals stated that the General Assembly "explicitly enumerated four defenses to the crime of theft," now codified at § 7–110, describing them as "affirmative de-

fense[s] fashioned by the Legislature." § 7–110, entitled "Defenses and presumptions," contains subsections (a), (b) and(c), which are labeled as "Prohibited defense—Interest in property," "Prohibited defense—Illegally obtained property," [6] and "Allowed defenses," respectively. § 7–110(c) provides "[i]t is a defense to the crime of theft that" the defendant "acted under a good faith claim of right to the property" and "acted in the honest belief that the defendant had the right to obtain or exert control over the property," among other defenses not relevant to this case. Absent from § 7–110, is a defense that the accused took "reasonable measures to restore the property." That provision is included in § 7–104(d) along with provisions that the former common law deemed elements of larceny that the State must prove. *See Loker v. State*, 250 Md. 677, 686–87, 245 A.2d 814 (1968).

The State did not present any evidence to support the trial court's presumption that, at the time when Weems spoke with Coulter, she "remained in possession of [the] money." To be sure, Coulter tried to testify to her conversation with Weems "as to why [Weems] didn't" restore any of the money that she had received from Coulter, but the prosecutor twice precluded that testimony. The State contends that "it was reasonable for the [court] to infer [from the circumstances] that Weems refused to take 'reasonable measures to restore the'" money to Anchor. Indeed, the trial judge does "possess[ ] the ability to choose among differing

---

**6.** CL § 7–110 states, in relevant part:
  (a) Prohibited defense—Interest in property.—
  (1) It is not a defense to the crime of theft that the defendant has an interest in the property that was the subject of the theft if another also has an interest in or right to possess the property that the defendant is not entitled to infringe. . . .
  (b) Prohibited defense—Illegally obtained property.—
  (1) It is not a defense to the crime of theft that the property was taken, obtained, or withheld from a person who had obtained the property by illegal means.
  (2) It is not a defense to the crime of theft of property or services with a value of less than $100 as provided under § 7–104(g)(3) of this subtitle that the value of the property or services at issue is $100 or more.

inferences that might possibly be made from a factual situation," *Moore,* 198 Md.App. at 712, 18 A.3d 981, but "inferences made from circumstantial evidence must rest upon more than mere speculation or conjecture." *Smith v. State,* 415 Md. 174, 185, 999 A.2d 986 (2010) (citation omitted).

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY WITH INSTRUCTIONS TO VACATE CONVICTION FOR THEFT.**

**COSTS TO BE PAID BY ANNE ARUNDEL COUNTY.**